## A00A0268. SUMMERHILL NEIGHBORHOOD DEVELOPMENT CORPORATION v. TELERENT LEASING CORPORATION.

(528 SE2d 889)

ELDRIDGE, Judge.

On June 18, 1996, Summerhill Neighborhood Development Corporation, under a written agreement, had installed a telephone system and other equipment from Telerent Leasing Corporation to be paid for monthly for 60 months. However, on August 1, 1997, Summerhill stopped making payments. Telerent recovered all of its equipment in November 1997 and re-leased or sold the personal property. Upon suit, Summerhill contended that the agreement was a purchase agreement with a secured transaction worded as a lease with the option to buy to provide security for Telerent; Telerent contended that the agreement constituted a valid lease and not a secured transaction agreement. On summary judgment the trial court found that the agreement constituted a valid lease. In de novo examination of the evidence, we find that the agreement constituted a lease and affirm.

Summerhill contended that the option to purchase at the end of the lease was for $1, a nominal price that indicated a security agreement under OCGA § 11-1-201 (37), but Telerent countered that the addendum signed by Summerhill on August 3, 1996, before the system had been installed, required purchase at fair market value and provided consideration as a true lease. Summerhill, however, argued that no consideration was given for the addendum and argued that it had to make a down payment, to have automatic renewal, to pay applicable taxes and insurance, and to make repairs on the telephone system. Telerent filed a Uniform Commercial Code-1 financing statement. However, the trial court looked to the provisions for the option to purchase at the fair market value at the termination of the lease period to find a true lease.

1. Summerhill's first enumeration of error is that the trial court erred in ruling that the agreement was a lease and not a secured transaction sale. We do not agree.

The agreement clearly and unambiguously states that Telerent owned the property and that Summerhill had only the right to use the equipment under the lease. "Lessee shall have no property interest [in the property]." The agreement provided that, at the termination of the lease, "the lessee shall remove the equipment from the premises referred to herein and surrender the equipment in good operating condition to Telerent or its assignee." The agreement by its express terms did not become effective or require Summerhill to pay until the date of delivery and completion of installation, which did not occur until after August 5, 1996.

Prior to the delivery and installation of the telephone system by

Telerent and first payment by Summerhill on September 1, 1996, the parties mutually entered into the addendum which imposed mutual obligations that required, at the termination of the lease, payment of the fair market value for the property rather than a nominal sum if the option to purchase was exercised. Telerent assumed the risk of ownership and depreciation of the property, retained liability as lessor for the property, surrendered any potential security interest protection, and granted an option right of purchase at the fair market value; Summerhill assumed a lease obligation and surrendered any benefits of ownership and liability as purchaser. Both mutually agreed to the changes in the statutory rights and liabilities under the UCC. Clearly, a mutual exchange of rights and obligations occurred between the parties in an arm's length transaction, which incidentally changed the evidence as to the legal effect of the agreement. Contrary to the contentions of Summerhill, new consideration for the written addendum existed, thereby modifying the agreement. *Ranger Constr. Co. v. Robertshaw Controls Co.*, 166 Ga. App. 679, 681 (305 SE2d 361) (1983); *J. E. M. Enterprises v. Taco Pronto*, 145 Ga. App. 573, 574 (1) (244 SE2d 253) (1978); *Houston v. Jefferson Standard Life Ins. Co.*, 119 Ga. App. 729, 733 (d) (168 SE2d 843) (1969).

While the terms of the agreement created a lease rather than a secured transaction, any ambiguity caused by the option purchase price at the end of the lease ceased to exist when the parties entered into the addendum, which made the purchase price the fair market value. See *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755, 757 (500 SE2d 638) (1998); *Mejia v. C & S Bank*, 175 Ga. App. 80, 82 (332 SE2d 170) (1985). Such term constitutes the strongest evidence of the intent of the parties. Since this term was changed by the parties prior to performance by either party, this term gives stronger evidence of the intent of the parties that the agreement constituted a true lease and not a disguised secured transaction.

Payment by the lessee of maintenance, taxes, and insurance does not determine whether this constituted a secured transaction. *Mejia v. C & S Bank*, supra at 82. Likewise, a down payment on the lease does not create a secured transaction. *Third Century v. Morgan*, 187 Ga. App. 718, 719 (371 SE2d 262) (1988); *Mejia v. C & S Bank*, supra at 81. While Telerent made an informational filing, the agreement did not require a financing statement; such UCC filing did not make the agreement a secured transaction. *Woods v. Gen. Elec. &c. Lease*, 187 Ga. App. 57, 59 (1) (369 SE2d 334) (1988).

The trial court properly found that the agreement was a true lease and granted summary judgment to Telerent. See *Carter v. Tokai Financial Svcs.*, supra at 757; *Third Century v. Morgan*, supra at 720; *Woods v. Gen. Elec. &c. Lease*, supra at 59-60; *Mejia v. C & S Bank*, supra at 82.

2. Summerhill's second enumeration of error is that the trial court erred in finding that the lease acceleration provision was not a penalty. We do not agree.

OCGA § 11-2A-101 et seq. was enacted by the General Assembly in 1993 to deal with the lease of personal property.[1] Therefore, OCGA § 11-2A-504 (1) governs liquidated damages in a personal property lease and provides:

> Damages payable by either party for default, or any other act or omission, including indemnity for loss or diminution of anticipated tax benefits or loss or damage to lessor's residual interest, may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission.

The drafters of the Uniform Commercial Code commented that:

> [a] liquidated damage formula that is common in leasing practice provides that the sum of lease payments past due, accelerated future lease payments, and the lessor's estimated residual interest, less the net proceeds of disposition (whether by sale or re-lease) of the leased goods is the lessor's damages. Tax indemnities, costs, interest and attorney's fees are also added to determine the lessor's damages. . . . This section does *not* incorporate two other tests that under sales law determine enforcibility [sic] of liquidated damages, i.e., difficulties of proof of loss and inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. The ability to liquidate damages is critical to modern leasing practice; given the parties' freedom to contract at common law, the policy behind retaining these two additional requirements here was thought to be outweighed. Further, given the expansion of subsection (1) to enable the parties to liquidate the amount payable with respect to an indemnity for loss or diminution of anticipated tax benefits resulted in another change: the last sentence of § 2-718 (1), providing that a term fixing unreasonably large liquidated damages is void as a penalty was also not incorporated. The impact of local, state, and federal tax laws on a leasing

---

[1] Ga. L. 1993, p. 633, § 1. The Act became effective on July 1, 1993, as to all lease contracts "that are first made or that first become effective between the parties on or after that date." Ga. L. 1993, p. 697, § 5. See also *Colonial Pacific Leasing Corp. v. McNatt*, 268 Ga. 265, 268 (486 SE2d 804) (1997).

transaction can result in an amount payable with respect to the tax indemnity many times greater than the original purchase price of the goods. *By deleting the reference to unreasonably large liquidated damages[,] the parties are free to negotiate a formula, restrained by the rule of reasonableness in this section. These changes should invite the parties to liquidate damages.*

(Emphasis supplied.) Selected Commercial Statutes, Uniform Commercial Code Official Comments (West Pub. Co. 1996 ed.), pp. 207-208.

The liquidated damages provisions of the personal property lease used a formula in compliance with the drafter's formula and in compliance with the provisions enacted by the General Assembly. Thus, the liquidated damages provision is enforceable under Georgia law.[2] While the liquidated damages clause did not require the present value of the balance of rentals which had been accelerated upon default, Telerent sought only such sum consistent with OCGA §§ 11-2A-527 (1) and 11-2A-528 (1) when an OCGA § 11-2A-504 liquidated damage clause was not used.[3] In this contract, Summerhill had credited the sale or re-lease proceeds of the personal property under the terms of the agreement. Thus, the liquidated damages provision does not act as a penalty, because Telerent waived any right to receive anything other than present value for the personal property. See generally *Carter v. Tokai Financial Svcs.,* supra at 759. Therefore, the trial court did not err.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 31, 2000.

*Hipes & Norton, Albert L. Norton, Jr., Sherrod J. Waites II,* for appellant.

*Savell & Williams, William E. Turnipseed,* for appellee.

---

[2] *Warren's Kiddie Shoppe v. Casual Slacks,* 120 Ga. App. 578, 580 (171 SE2d 643) (1969), holds that official comments of the UCC should be given due consideration in determining the intent of the General Assembly in enacting the provisions verbatim.

[3] *Adams v. D & D Leasing Co. of Ga.,* 191 Ga. App. 121, 123-124 (381 SE2d 94) (1989) does not apply, because OCGA § 11-2A-504 legislatively radically changed the statutes dealing with liquidated damages as to leased personalty existing at the time of its decision. Further, *Adams* relied on *Jones v. Clark,* 147 Ga. App. 657, 659 (2) (249 SE2d 619) (1978) as authority, which involved the liquidated damages provision in a lease of realty.