A01A1822. SUN v. MERCEDES BENZ CREDIT CORPORATION.
(562 SE2d 714)

RUFFIN, Judge.

Mercedes Benz Credit Corporation ("MBCC") sued Hong K. Sun after Sun breached his lease agreement for a 1996 Mercedes Benz automobile. Sun counterclaimed, alleging that MBCC libeled him in a report to credit reporting agencies and that MBCC's failure to rectify the erroneous report violated 15 USC § 1666. The trial court granted summary judgment to MBCC on both its claim and Sun's counterclaim. Sun appeals, asserting that the lease contained an unenforceable liquidated damages clause and that factual issues remain concerning his libel counterclaim. Sun also contends that the trial court erred by refusing to allow him to amend his counterclaim to add additional claims. For reasons that follow, we affirm in part and reverse in part.

1. In reviewing the trial court's grant of summary judgment, we conduct a de novo review of the evidence.[1] "To prevail at summary judgment under OCGA § 9-11-56, [MBCC] must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to [Sun], warrant judgment as a matter of law."[2]

Viewed in favor of Sun, the evidence shows that on May 11, 1996, Sun signed a five-year lease for a new Mercedes Benz automobile.[3] The lease agreement required Sun to make monthly payments of $1,268.52.[4] According to the lease, the monthly payment comprised

---

[1] See *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

[2] (Citation and punctuation omitted.) Id.

[3] The leased vehicle was a Mercedes Benz model SL320 coupe/roadster with a retail sticker price of $78,895.

[4] Although the lease agreement designates Regal Nissan as the lessor, it was subsequently assigned to MBCC.

a "Base Monthly Lease Payment" of $1,196.72, with the balance consisting of "Sales/Use Taxes." The agreement further provided that the estimated end of term residual value for the car was $39,099.55. Under a liquidated damages clause, Sun agreed:

> that upon my default I shall be liable for and shall pay to [MBCC] upon demand made by [MBCC] the sum of the following: i) any lease payments or other amounts due and owing under the lease at the time of default; plus ii) the balance of the lease payments which I would have made had the lease gone to term, less a deduction for the time-value of such payments computed in accordance with the Rule of 78's; plus iii) the Estimated End of Term Residual Value . . . ; plus iv) an amount equal to one monthly lease payment; plus v) a disposition fee of $250.00; plus vi) any and all commissions, fees or other amounts paid by [MBCC] as consideration for the assignment of this lease.

Sun made payments under the lease through June 1997. In his affidavit, Sun stated that he stopped making payments after MBCC refused to provide him with roadside assistance following a collision. Sun apparently told MBCC where the car was being repaired and that he was terminating the lease. According to the affidavit of MBCC's representative, it treated Sun's failure to make further payments as a default, "repossessed" the car on September 25, 1997, and thereafter sold it at auction for $47,250.

In calculating its damages, MBCC charged Sun the following: (1) $3,590.16 for three months of payments due at the time of default, plus taxes and late charges for those payments; (2) $51,458.96 for the accelerated balance of the remaining payments due under the lease, less a "time value discount" of $12,173.74; (3) $39,099.55 for the end of term residual value; (4) $1,196.72 for "One Monthly Lease Payment[ ]"; and (5) $1,235 in repossession and storage fees. MBCC then deducted the $47,250 in sales proceeds, less $325 in costs associated with preparing the car for sale and selling the car. According to the affidavit of MBCC's representative, "[t]he time value discount was calculated using simple interest, which is slightly more advantageous to the customer as it results in more credit back for unearned interest than the discount method known as the Rule of 78's." After calculating its damages, MBCC sued Sun, seeking to recover an alleged deficiency of $38,487.63,[5] plus attorney fees and accrued interest.

---

[5] Although MBCC's complaint seeks a principal sum of $38,787.63, the evidence it presented in support of its motion for summary judgment indicates the amount of the deficiency was $38,487.63, the amount awarded by the court on summary judgment.

Sun asserts that the trial court erred in granting summary judgment for this amount, arguing that MBCC calculated its damages according to unenforceable provisions of the liquidated damages clause. In addressing Sun's arguments, we note that

> trial courts should not ordinarily submit the issue of whether a contract provides for liquidated damages or a penalty to the jury. This issue should be decided as a matter of law, unless after applying the usual rules of contract construction, an ambiguity remains warranting submitting a factual issue to the jury.[6]

The lease agreement here should be construed under the Uniform Commercial Code's lease provisions.[7] Under the UCC,

> [d]amages payable by either party for default, or any other act or omission, including indemnity for loss or diminution of anticipated tax benefits or loss or damage to lessor's residual interest, may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission.[8]

To determine the legislature's intent in enacting this provision, we consult the official comments accompanying the UCC,[9] which state:

> Many leasing transactions are predicated on the parties' ability to agree to an appropriate amount of damages or formula for damages in the event of default or other act or omission. The rule with respect to sales of goods (Section 2-718) may not be sufficiently flexible to accommodate this practice. Thus, consistent with the common law emphasis upon freedom to contract with respect to bailments for hire, this section has created a revised rule that allows greater flexibility with respect to leases of goods.[10]

Thus, with regard to leases, the legislature dispensed with two of the traditional "tests that under sales law determine enforceability of liq-

---

[6] (Citation omitted.) *Roswell Properties v. Salle*, 208 Ga. App. 202, 205 (3) (c) (430 SE2d 404) (1993).

[7] See *Summerhill Neighborhood Dev. Corp. v. Telerent Leasing Corp.*, 242 Ga. App. 142, 144 (2) (528 SE2d 889) (2000); *Carter*, supra at 757 (2); OCGA §§ 11-2A-102 (applicability to lease transactions); 11-2A-103 (1) (e) (defining a "consumer lease").

[8] OCGA § 11-2A-504 (1).

[9] See OCGA § 1-3-1 (a); *Summerhill*, supra at 145, n. 2.

[10] UCC § 2A-504 (Official Comments 1998).

uidated damages, i.e., difficulties of proof of loss and inconvenience or nonfeasibility of otherwise obtaining an adequate remedy."[11] The drafters of the UCC reasoned:

> The ability to liquidate damages is critical to modern leasing practice; given the parties' freedom to contract at common law, the policy behind retaining these two additional requirements here was thought to be outweighed. Further, . . . the expansion of subsection (1) to enable the parties to liquidate the amount payable with respect to an indemnity for loss or diminution of anticipated tax benefits resulted in another change: the last sentence of Section 2-718 (1), providing that a term fixing unreasonably large liquidated damages is void as a penalty, was also not incorporated. The impact of local, state and federal tax laws on a leasing transaction can result in an amount payable with respect to the tax indemnity many times greater than the original purchase price of the goods. By deleting the reference to unreasonably large liquidated damages the parties are free to negotiate a formula, restrained by the rule of reasonableness in this section. These changes should invite the parties to liquidate damages.[12]

The commentators also observed that

> A liquidated damages formula that is common in leasing practice provides that the sum of lease payments past due, accelerated future lease payments, and the lessor's estimated residual interest, less the net proceeds of disposition (whether by sale or re-lease) of the leased goods is the lessor's damages. Tax indemnities, costs, interest and attorney's fees are also added to determine the lessor's damages. . . . Whether these formulae are enforceable will be determined in the context of each case by applying a standard of reasonableness in light of the harm anticipated when the formula was agreed to.[13]

As the defaulting party, Sun has the burden of proving that the formula is unreasonable in light of the anticipated loss.[14] In attempt-

---

[11] Id. Compare OCGA § 11-2-718 (1); *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 644 (4) (507 SE2d 823) (1998). But see *Carter*, supra at 758 (interpreting lease under UCC, but applying three-part test).

[12] UCC § 2A-504 (Official Comments 1998).

[13] Id.

[14] See *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808-809 (375 SE2d 222) (1989).

ing to meet this burden, Sun challenges three provisions in the lease's liquidated damages clause. First, Sun challenges the acceleration provision on the ground that it permits MBCC to recover all future lease payments, without properly accounting for the unearned interest that was included in those payments. But Sun has not pointed to any *evidence* showing how much interest was included in the "Base Monthly Lease Payment,"[15] and the lease merely allowed MBCC to accelerate these base payments with a required deduction to account for the present value of the accelerated amount. The UCC commentators noted that such a formula is common in the industry,[16] and we have previously found that a like provision "tends to establish a reasonable estimate of probable loss."[17] This is true here because Sun's breach of the agreement deprived MBCC of the principal and interest, which is now discounted, that it could have earned under the lease.

This Court's decision in *Carter v. Tokai Financial Svcs.*,[18] relied on by Sun, does not require a different result. In *Carter*, the liquidated damages clause permitted the lessor to not only recover the present value of all future rents, but also keep the proceeds from the sale of the repossessed merchandise. Thus, unlike the liquidated damages clause here, the one in *Carter* gave the lessor "the benefit of both the property and the value of all future rent payments," placing the lessor in a far "superior position following default to that which it was in before such default occurred."[19] The facts in *Carter* show that the formula was patently unreasonable in light of the harm anticipated when the parties entered the agreement.

Sun's second challenge, and what appears to be the real thrust of his argument, concerns MBCC's method of discounting the accelerated lease payments to a present value. According to Sun, the lease provision allowing MBCC to accelerate payments using the "Rule of 78's" renders the damages provision unreasonable as a matter of law. Again, we disagree.

---

[15] Although Sun, in his appellate brief, presents a calculation that purports to establish the amount of interest included in the payment, he presents no evidence establishing that MBCC used the same calculation in determining the amount of his payment. Our research suggests that the formula used to compute monthly lease payments is far more complex than Sun has indicated in his brief. See, e.g., *Miller v. Nissan Motor Acceptance Corp.*, 2000 U. S. Dist. LEXIS 15645, *10-23 (E.D. Pa.) (discussing evidence showing how monthly lease payment calculated).

[16] UCC § 2A-504 (Official Comments 1998).

[17] *Jamsky v. HPSC, Inc.*, 238 Ga. App. 447, 449 (519 SE2d 246) (1999). See also OCGA § 11-2A-504 (1); *Summerhill*, supra at 145; *Carter*, supra at 759; *In re Baldwin Rental Centers*, 228 Bankr. 504 (S.D. Ga. 1998).

[18] 231 Ga. App. at 755.

[19] Id. at 759 (2).

Although Sun cites cases in which Georgia appellate courts have invalidated the Rule of 78's method to discount future interest, he cites no cases in which we have concluded that the method is unreasonable per se. Instead, each of the cited cases involved circumstances where use of the rule rendered the finance charge usurious under the Georgia Motor Vehicle Sales Finance Act ("MVSFA").[20] But it is clear that the finance charge limitation at issue in these cases applied only to sales transactions involving a "buyer" and a "seller" under the MVSFA.[21] Thus, even if Sun had presented any evidence showing the actual amount of interest that was included in the base payment due under his lease, that interest rate is not controlled by the MVSFA. Furthermore, without evidence of the amount of interest included in the accelerated amount, we have no way of determining whether the Rule of 78's provision rendered the agreement unreasonable in light of MBCC's anticipated damages. Considering that Sun has the burden of proving the provision is unreasonable and that the legislature intended to provide leasing parties the flexibility to create their own terms,[22] we cannot conclude, under the circumstances of this case, that use of the Rule of 78's in the liquidated damages clause was unreasonable as a matter of law.

Sun's final challenge to the liquidated damages clause concerns the provision obligating him to pay "an amount equal to one monthly lease payment." We agree with Sun that this is unreasonable. Because the other provisions in the liquidated damages clause compensate MBCC for every conceivable loss, we fail to see how an additional monthly lease payment can be considered reasonable in light of the anticipated harm caused by a default.[23] Under these circumstances, the additional lease payment merely provided MBCC with a windfall, and the trial court erred in granting MBCC summary judgment for the additional lease payment. This single deficiency, however, does not render the entire clause unreasonable, and because the parties expressly agreed that the contract was severable, the remaining provisions of the liquidated damages clause remain enforceable.[24]

2. Sun next asserts that the trial court erred in granting sum-

---

[20] OCGA § 10-1-30 et seq.; *Carter v. First Fed. Sav. &c.*, 179 Ga. App. 532, 535 (2) (347 SE2d 264) (1986) (citing *Cook v. First Nat. Bank &c.*, 130 Ga. App. 587, 588 (2) (203 SE2d 870) (1974), where we recognized that the Rule of 78's method resulted in interest that exceeded the finance charges permitted by the Act). See also *Bozeman v. Tifton Fed. Sav. &c. Assn.*, 164 Ga. App. 260, 261 (1) (247 SE2d 49) (1982).

[21] See OCGA § 10-1-31 (a) (2) (defining "Finance Charge" as "amount agreed upon between the *buyer* and the *seller* . . . to be added to the cash *sale* price") (emphasis supplied). See also OCGA § 10-1-33 (establishing finance charge limitations under the MVSFA).

[22] See UCC § 2A-504 (Official Comments 1998).

[23] See OCGA § 11-2A-504 (1); *Carter*, 231 Ga. App. at 759.

[24] See *Bulloch South, Inc. v. Gosai*, 250 Ga. App. 170, 175 (1) (b) (550 SE2d 750) (2001).

mary judgment to MBCC on his libel counterclaim. In the counterclaim, Sun alleged that MBCC falsely reported to credit agencies that it recovered the vehicle in a "repossession" and that the balance due was "$38,337.00, when in fact[, it] . . . is much less than that." We find no error.

"A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."[25] Here, we already addressed the propriety of MBCC's claim against Sun for the deficiency. Although we found that the provision obligating Sun to pay an additional lease payment was unenforceable, inasmuch as the damages provision was included in the lease, we find nothing false or malicious about the amount *claimed* by MBCC in the credit report.

Similarly, the fact that MBCC stated that it had repossessed the car does not render the report libelous. Although Sun told MBCC where it could find the car, he does not dispute that he was three months in arrears at the time MBCC recovered the vehicle, and the evidence shows that the company expended $1,235 to take the vehicle back. Black's Law Dictionary defines "repossession" as "[t]o take back — as when a seller repossesses or takes back an item if the buyer misses an installment payment."[26] That is exactly what occurred here, and MBCC's report was thus neither false nor malicious. Accordingly, the trial court did not err in granting summary judgment to the company on Sun's libel counterclaim.[27]

3. Finally, Sun asserts that the trial court erred in denying his motion to add an additional counterclaim that matured after he answered the complaint. In the proposed counterclaim, Sun alleges that MBCC's refusal to correct the credit report after written demand gave rise to a cause of action under 15 USC § 1681n and that its attempt to collect usurious interest entitles him to recovery under the MVSFA. The decision whether to grant Sun's motion was "totally within the trial court's discretion."[28] In light of our discussion above rejecting Sun's arguments about the credit report and the purported usurious interest charges under the MVSFA, we conclude that the trial court did not abuse its discretion in denying Sun's motion.[29]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

---

[25] OCGA § 51-5-1 (a).

[26] Black's Law Dictionary (5th ed. 1979), p. 1169.

[27] See *Reeder v. Gen. Motors Acceptance Corp.*, 235 Ga. App. 617, 620 (2) (510 SE2d 337) (1998).

[28] (Punctuation omitted.) *Feifer v. Reliance Kitchens, USA*, 189 Ga. App. 653, 655 (4) (377 SE2d 28) (1988).

[29] See id.

DECIDED MARCH 1, 2002 —
RECONSIDERATION DENIED MARCH 27, 2002 —

*Freed & Berman, Robert H. McKnight, Jr.,* for appellant.
*Stokes, Lazarus & Carmichael, William K. Carmichael, Shawn M. Winterich,* for appellee.