**Alberto TORRES, Plaintiff,**

v.

**BANC ONE LEASING CORPORA-TION and Banc One Credit Company, Defendants.**

**Civil Action File No. 1:01–CV–1496–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 1, 2002.

Daniel A. Edelman, phv, Cathleen M. Combs, phv, Anne M. Burton, phv, Edelman Combs & Latturner, Chicago, IL, Charles McLeod Baird, Atlanta, GA, for plaintiff.

Darryl J. May, phv, John–Paul Madden, phv, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, Therese Glisson Franzen, John H. Bedard, Jr., Franzen & Salzano, Norcross, GA, Therese Glisson Franzen, for defendant.

### ORDER

THRASH, District Judge.

This is a consumer class action seeking damages, declaratory and injunctive relief in which Plaintiff challenges the legality of the early termination charge formula used by Defendant Banc One Credit Company. The case is before this Court on Defendants' Motion for Summary Judgment [Doc. 29]. For the reasons set forth below, Defendants' motion is granted.

### I. BACKGROUND

Viewed in the light most favorable to the Plaintiff, the facts of this case are as follows. Plaintiff is an individual who resides in Jackson, Georgia. Defendant Banc One Credit Company ("Banc One") is an Ohio corporation which engages in consumer automobile lease financing. Defendant Banc One Leasing Corporation engages in commercial lease transactions. Defendant Banc One Leasing Corporation is separate from Defendant Banc One, and had no involvement with Plaintiff's automobile lease.[1]

Plaintiff leased a new Ford Escort from Spalding Ford in Griffin, Georgia on March 20, 1999. (Samenuk Dec. ¶ 17.) The lease was for 60 months and was to end in March of 2004. (Id.) The lease was assigned to Defendant Banc One's predecessor, Valley National Financial Services Co. (Samenuk Dec. ¶ 1.) Valley National became Banc One on July 20, 1999. (Id.) In addition to the lease, Plaintiff purchased a "Rental Edge" warranty for the car at a cost of $1,500, also financed by Defendant Banc One. (Furash Dec. ¶ 2); (Plaintiff's Ex. A.)

In order to understand the issues in the case, some analysis of the automobile leasing business is required. Automobile leasing is a popular way of financing an automobile with a reduced down payment and reduced monthly payments compared to conventional purchase money loans. The process begins when the consumer and dealer agree on the price for an automobile. (Samenuk Dec. ¶ 6.) After accounting for trade-ins, down payments, add-ons and that sort of thing, this is the "adjusted capitalized cost" of the vehicle. (Id.) The leasing company then determines the "residual value" of the vehicle which is a prediction of the value of the vehicle at the end of the lease. (Samenuk Dec. ¶ 7.)

Automobile lease payments have two components. The first component is the depreciation portion of the payment. Over the life of a lease, the automobile's value depreciates. (Samenuk Dec. ¶ 9.) The total depreciation during the lease is obtained by comparing the adjusted capitalized value of the vehicle at lease inception to its projected residual value at lease end. (Id.) The depreciation of an automobile is subject to a multitude of variables, such as total mileage, gas prices, economic conditions and popularity of a vehicle, to name a few. (Samenuk Dec. ¶ 7.)

Automobile leases are designed to recapture this depreciation by charging the lessee for the vehicle's depreciation as the lease progresses. (Samenuk Dec. ¶ 9.) Although vehicles depreciate more rapidly at the beginning of a lease term, the lease used by Defendant Banc One assesses depreciation on the straight line method. (Samenuk Dec. ¶ 9.) The straight line

---

1. As Plaintiff does not contest this fact and does not oppose the dismissal of Banc One Leasing Corporation, Defendants' Motion for Summary Judgment is granted as unopposed as to that Defendant.

method results in recapturing depreciation evenly over the life of the lease although, in actuality, there is significantly more depreciation at the beginning of the lease than at the end. (Samenuk Dec. ¶¶ 9–11.)

The second portion of an automobile lease is the rent charge, which is akin to interest on a loan. (Samenuk Dec. ¶ 6.) The rent charge is assessed as a percentage on the full adjusted capitalized value of the lease. (Samenuk Dec. ¶ 6.) The rental charge, like the depreciation portion of the payment, is also assessed in an even amount over the course of the lease. (Samenuk Dec. ¶ 9.) The leasing company paid the dealer the capitalized cost of the vehicle. The rental charge constitutes interest on the funds advanced plus amortization of the principal (minus the residual value). (*Id.*) Interest and amortization are also variable over the course of the lease with the finance charges highest at the beginning of the lease and amortization of principal highest at the end. (Samenuk Dec. ¶ 9.)

The leasing company receives the benefit of its bargain only if the consumer carries the lease to termination. Typically, an automobile lease will contain a charge for early termination. The early termination charge is an attempt to compensate the lessor for the difference between straight line and actual depreciation of the vehicle and for the uneven amortization of principal. (Samenuk Dec. ¶ 11.) Plaintiff's lease contained a formula for determining the early termination charge. In the event of such a termination, Plaintiff would owe the sum of (1) all payments which were due or overdue at the time of termination, plus (2) the sum of the remaining monthly payments, plus (3) the residual value of the vehicle, minus (4) unearned rent charges included in the remaining monthly payments calculated according to the actuarial method, minus (5) the realized value of the vehicle. (*See* Plaintiff's Ex. A.)

In February of 2000, Plaintiff cancelled his "Rental Edge" warranty via a telephone call placed to Defendant Banc One. (Furash Dec. ¶ 3), (Torres Dec. ¶ 4). Defendant Banc One received a refund from the warranty company in two separate checks, but did not give the proceeds from those checks directly to Plaintiff. (Furash Dec. ¶ 3), (Torres Dec. ¶ 7.) In December of 2000, Plaintiff terminated his lease 39 months early. (Samenuk Dec. ¶ 18.) Thereafter, Defendant Banc One sent Plaintiff an invoice for $6,365.97. (Samenuk Dec. ¶ 18.) This figure represented depreciation payments totaling $9,253.53, plus residual value of $4,537.50, plus fees of $74.94, minus sale proceeds of $7,500. (Complaint, Ex. B.) This amount constituted the amount due to Banc One under the early termination formula in Banc One's lease. (Samenuk Dec. ¶ 18), (Complaint, Ex. A.) This early termination fee, however, was waived by Banc One after Plaintiff filed this lawsuit. Plaintiff has not paid the early termination charge. (Samenuk Dec. ¶ 18.)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is material if it "might affect the outcome of the suit under the governing law." *Id.* The court should view the evidence and any inferences that may be

drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v, Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

Plaintiff alleges that the early termination charge formula in Banc One's lease and the way Banc One handled the refund of Plaintiff's Rental Edge Warranty premium violate the Consumer Leasing Act, 15 U.S.C. § 1667 *et seq.,* and Georgia's Uniform Commercial Code, O.C.G.A. § 11–2A–504(1). The Court disagrees, and holds that the Defendants are entitled to summary judgment. The Consumer Leasing Act, the Georgia Uniform Commercial Code and the Rental Edge Warranty premium claims, are discussed separately below.

### A. The Consumer Leasing Act

The Consumer Leasing Act requires all early termination charges to be specified in the lease. 15 U.S.C. § 1667b(b). Additionally, the charges must be reasonable in light of the anticipated or actual harm caused by the early termination, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. (*Id.*) Plaintiff and Banc One agree as to the mechanics of the calculation of the early termination formula in Banc One's lease. The parties also agree as to the amount of charges produced by that formula in this case. Plaintiff contends that

the early termination formula violates the Act because it makes an early terminating lessee responsible for covering any shortfall in the vehicle's actual realized value as against the projected end of lease residual value. As there is no genuine issue of material fact regarding the Consumer Leasing Act claim, it is appropriate for the claim to be addressed by summary judgment.

■ Congress gave the Federal Reserve Board the power to issue regulations implementing the Consumer Leasing Act. 15 U.S.C. § 1667f; S.Rep. No. 94–590, at 7 (1976), *reprinted in* 1976 U.S.C.C.A.N. 431, 437. The Board did so by issuing Regulation M, 12 C.F.R. § 213. To supplement Regulation M, the Board published commentary which is controlling authority in this Court if the statutes or regulations are not clear in their intent. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 560, 566, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (noting deference due to the Federal Reserve Board official staff commentary when Congress delegated implementation of the Truth in Lending Act to the Board).

■ Neither Regulation M nor its commentary expressly approve of formulas which base early termination charges on the difference in realized and residual values. Nevertheless, Regulation M does regulate matters involving these types of early termination charges, including notice requirements and remedies. 12 C.F.R. § 213.4(k),(*l*). Regulation M requires that lessors notify lessees if they will be liable for the difference between the realized and residual values of leased property at the end of the lease term, or at early termination. 12 C.F.R. § 213.4(k). Though this language does not expressly approve of an early termination charge based on the difference in residual and realized values, it shows the Board expected lessors to

assess such a charge so long as the lessee is given notice. Second, Regulation M requires a lessor to notify a lessee of his right to an appraisal of the value of leased property, if early termination or end of lease charges will be based on realized value. 12 C.F.R. § 213.4(*l*). The commentary to this section indicates this kind of notice is usually only required where the lessee will be liable for the difference in the residual and realized value of the vehicle. 12 C.F.R. § 213, Supp. I § 213.2(m)(1). Thus, the right to an appraisal further shows the Board expected lessees to be liable for the difference in the residual and realized value of leased property at early termination.

Finally, the Board could have prohibited early termination charges based on the difference in residual and realized value, but declined to do so. Instead of prohibition, the Board only requires the lessee be given notice of these charges and notice of an appraisal remedy. The decision by the Board to require notice, instead of prohibiting this type of early termination charge, leads this Court to find that such charges are proper under the Leasing Act so long as proper notice is given. *Dole v. United Steelworkers of America,* 494 U.S. 26, 33–34, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990) (holding decision to require disclosure is a substantive regulatory choice that disclosure is the least intrusive measure which will sufficiently protect the public). Accordingly, Defendants are entitled to summary judgment.

Plaintiff argues that even if the regulations do authorize the type of early termination charge at issue in this case, those regulations refer only to open-end leases and not to closed-end leases such as the lease in the case at bar. In an open-end lease, the risk that the realized value of the vehicle might not meet the projected residual value at the end of the term is on the lessee. 12 C.F.R. § 213.2(i). The risk

is on the lessee because, if there is a deficit between a higher residual and a lower realized value, the lessee must then pay this difference to the lessor. In contrast, in a closed-end lease, this risk is on the lessor if the lease goes to full term. 12 C.F.R. § 213.2(d). In the instant lease, though it is "closed-end," the early termination clause made the lessee responsible for the deficiency if the realized value of the leased property did not meet the projected residual value. Plaintiff contends this is only permissible in an open-end lease. Plaintiff's arguments, however, are without merit.

The express language of Regulation M requires that "any consumer lease" must give notice whenever early termination charges are based on the difference in residual and realized values. 12 C.F.R. § 213.4. The phrase "any consumer lease" indicates that the Board believed both closed-end as well as open-end leases might contain early termination charges based on the difference in residual and realized values. A cardinal rule of construction requires that this Court adopt the interpretation which gives meaning to the whole regulation. *Culpepper v. Irwin Mortgage Corp.,* 253 F.3d 1324, 1329 (2001); *citing Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Understanding that "early termination" and the "end of the lease term" are different events, the definition section of Regulation M shows a closed-end lease may assess early termination charges based on the difference in the residual and realized value of leased property. An "open-end lease" is defined as a lease where the lessee owes the difference between the residual and realized values of the leased property at the "end of the lease term." 12 C.F.R. § 213.2(i). A "closed-end lease," on the other hand, is defined as any lease which is not an open-end lease. 12 C.F.R. § 213.2(d). While

by definition only an open-end lease may levy a charge based on the difference between residual and realized values at the "end of the lease term," either type of lease may levy such a charge at early termination, since "early termination" is not the "end of the lease term." *Compare* 12 C.F.R. § 213.2(d), (i) and § 213.4(k), (*l*). Thus, Regulation M does not prohibit early termination charges based on the difference in residual and realized values in closed-end leases. Rather, considering the general acceptance of such early termination charges in all consumer leases, Regulation M indicates they are not prohibited by the Consumer Leasing Act. *See* 12 C.F.R. § 213.4(k), (*l*).

■ Plaintiff argues that even if Regulation M provides for early termination charges based on the difference in residual and realized value, such charges are improper under the Act's prohibition of unreasonable charges. Plaintiff contends the charges produced by this formula are not reasonable in light of the harm caused by early termination. This Court disagrees. Initially, the implicit approval of these charges in Regulation M is strong evidence that they are reasonable in light of the harm caused by early termination. The decision *to require disclosure of* these charges instead of prohibiting them represents a decision by the Act's implementing authority that these formula produce results consistent with the Act.

An early termination charge based on the difference in residual and realized value is also reasonable considering the realities of automobile lease financing. Vehicle depreciation is not linear. Rather, there is more depreciation at the beginning of a lease than at the end. However, Banc One's lease treated depreciation as if it were linear, by dividing the total amount of depreciation expected over the course of the lease by the number of months in the lease. This benefits the consumer by giv-ing him lower monthly payments at the beginning of the lease. In the beginning of the lease, Plaintiff's depreciation payments did not match the total amount of vehicle depreciation. At the end of the lease term, assuming the lease goes to full term, the consumer is paying for more depreciation than is occurring. When Plaintiff terminated his lease early, Banc One was deprived of the chance to make up the full amount of depreciation on the vehicle because the depreciation at the beginning of the lease was greater than the amount of depreciation payments Plaintiff made on the lease. The early termination charge in Banc One's lease is designed to recapture the depreciation lost at the beginning of the lease via the lower depreciation payments. It does this by adding the rest of the equal depreciation payments to the residual value and then subtracting what the lessor actually received, the value of the early returned vehicle. Such a formula makes Plaintiff responsible for the difference in the realized and residual value of the vehicle. It also makes Plaintiff responsible for the depreciation he consumed without payment during the first 21 months of the lease. This Court holds Banc One's early termination formula is reasonable since it allows a lessor to recover the depreciation lost due to early termination. As the charge itself is reasonable in light of the loss caused by Plaintiff's early termination, summary judgment for Banc One is proper.

Finally, Plaintiff argues that Defendants should have discounted the residual value of the vehicle to present dollar figures when determining early termination charges. This argument is not persuasive. The residual amount of the vehicle was part of the cost Plaintiff financed with his lease, much like principal on a loan. Plaintiff paid "rent charges," which are akin to interest, based on the adjusted capitalized cost of the vehicle which included its resid-

ual value. Like principal on a loan, Plaintiff is not entitled to a discount of this amount when he ends his lease with Banc One early. Plaintiff's argument is based upon a fundamental misunderstanding of what the early termination charge is designed to accomplish. The leasing company is not being paid for the residual amount of the vehicle. It is being paid for the loss of value of the vehicle in excess of the depreciation payments made by the consumer prior to early termination. The total of the remaining depreciation payments must be added to the residual value to determine the total potential depreciation remaining. From this figure, the realized value is subtracted to get an approximation of the actual depreciation during the consumer's use of the vehicle for which he has not paid. Thus, the resulting figure closely corresponds to the actual damages suffered by the lessor due to early termination. The lessor is not being paid early for the residual value of the vehicle; it is being paid in full for the depreciation that has already occurred. The argument that the residual value should be reduced to present cash value reflects a fundamental misunderstanding of what is accomplished by the early termination formula.

The Court is not persuaded otherwise by *Miller v. Nissan Motor Acceptance Corp.*, 2000 WL 1599244 (E.D.Pa.2000). In that case, the court noted that "our analysis of the Rose and Miller leases depended on a conclusion that may be less true for terminations far in advance of the lease end date." *Id.* at n. 90. The truth of this observation is shown by the fact that in this case the residual value is not greater than the realized value. The lease here was terminated so far in advance of the termination date that the value of the vehicle was much greater by thousands of dollars than it was projected to be at the end of the lease. Thus, the hypothetical injury to the consumer in *Miller,* and that which Plaintiff complains of in the application of

the formula, does not exist here. Furthermore, an "inflated" residual value has no adverse effect on the early termination charge since an inflated residual value would be offset by lower depreciation payments under the Defendant's formula. The Defendant is entitled to summary judgment on the Consumer Leasing Act claim.

### B. The Georgia Uniform Commercial Code

■ Defendants are entitled to summary judgment on Plaintiff's claims that the early termination formula violates O.C.G.A. § 11-2A-504(1). As with the Leasing Act claim, there is no dispute as to the terms of the early termination formula, its mechanics, nor the results it produced in this transaction. Thus, as there is no genuine issue of material fact, the claim is ripe for summary judgment.

The Georgia Court of Appeals recently dealt with an issue very similar to the instant case. In *Sun v. Mercedes Benz Credit Corp.*, 254 Ga.App. 463, 562 S.E.2d 714 (2002), the court considered an automobile lease with an early termination formula almost identical to the one in the instant lease. The only substantive difference between the leases is that the *Sun* lease called for the rule of 78's to discount future rent payments, while the Banc One lease uses the actuarial method. *Id.* at 467, 562 S.E.2d 714. This distinction between the cases favors Banc One, for the actuarial method is more advantageous to a lessee than the rule of 78's. (Samenuk Dec. ¶ 16.)

In *Sun,* the Georgia Court of Appeals held that an early termination clause which followed the example set out in the official comments to the UCC was proper, so long as the charge in the particular case was reasonable. *Id.* There is no dispute that the early termination formula in this case

follows that set out in the official comments to the U.C.C. *See* U.C.C. § 2A-504, cmt. § 1. As to reasonableness, just as discussed with the Consumer Leasing Act above, the Court finds that the charge produced by Banc One's early termination formula to be reasonable. Banc One suffered a loss because Plaintiff's lease payments did not reflect the true loss of value of the vehicle while it was in Plaintiff's possession. The Court holds that it is reasonable for a lessor to recapture the depreciation lost when a lessee prevents a lease from going to full term by early termination. *But see Carter v. Tokai Financial Services Inc.*, 231 Ga.App. 755, 758, 500 S.E.2d 638 (1998) (unreasonable for lessor to retain all the realized value of property while also charging lessee for the amounts due on the remainder of the lease and the residual value of the leased property). The Defendants are entitled to summary judgment on this claim.

### C. The "Rental Edge" Warranty

There is no genuine issue of material fact as to the Rental Edge Warranty claim, and Defendants are entitled to summary judgment. Banc One produced affidavits showing they received two rebates from the independent dealer of the Rental Edge Warranty. Those affidavits further show that Banc One applied all of the refunds to Plaintiff's early termination debt. Plaintiff responds to this evidence with his own affidavit, in which he denies any knowledge as to whether Banc One received a refund of the Rental Edge premium, or whether Banc One credited his account. The nonmovant has a duty to come forward with affirmative evidence to show there is a genuine issue of material fact, and affirming a lack of knowledge is insufficient for that purpose. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (requiring nonmovant to go beyond pleadings and present affirmative evidence showing there

is an issue of material fact). Further, even if there was a genuine issue of fact, it is not material. The refund of a warranty premium is not related to any early termination charge in this case. Whether or not Plaintiff received his warranty premium refund is not material to his claims that Banc One's early termination formula violated the Consumer Leasing Act and the Georgia Uniform Commercial Code. Accordingly, Defendants are entitled to summary judgment as to the Rental Edge Warranty issues. Accordingly, Banc One is entitled to summary judgment.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. 29] is GRANTED. Plaintiff's individual claim having been dismissed, he is not an adequate representative of the putative class and there are no interveners. *See Cotterall v. Paul*, 755 F.2d 777, 781 (11th Cir.1985). Therefore, the Motion to Certify Class [Doc. 8] is DENIED. The Clerk is directed to enter judgment for the Defendants. SO ORDERED, this ____ day of September, 2002.