## A04A1650. CAINCARE, INC. et al. v. ELLISON et al.
(612 SE2d 47)

ADAMS, Judge.

This case concerns whether a liquidated damage clause contained in a sales agreement between Caincare, Inc. and Discount Drug of Dalton, Ga., Inc. is a reasonable estimate of damages or an unenforceable penalty.

On January 1, 2002, Discount Drug entered into an agreement to sell its Valu-Rite pharmacy to Caincare. Pursuant to the agreement, Caincare was required to extinguish all vestiges of the Valu-Rite name from its business, and it did so with a single exception: "Valu-Rite" still appeared in small print at the top of faxes sent out by Caincare, even though Caincare was using its new name, Family Pharmacy, in all other respects. Discount Drug claimed that use of the Valu-Rite name on the faxes violated the following provision of the sales agreement:

> Upon execution of this agreement, the Purchaser and Purchaser's successors or assigns, must develop a business name and logo completely independent of and in no way associated with the name Valu-Rite. Expressly, the Purchaser, and Purchaser's successors or assigns, shall not use

---

[1] *Benefield v. State,* 264 Ga. App. 511 (591 SE2d 404) (2003).

the words "value," "valu," or any derivative thereof which may sound similar to the word "value," including but not limited to the substitution of a different letter at the beginning of the word "value," as the name of the Purchaser's new business. . . . This new and independent name and logo should replace any and all mention of the name Valu-rite. Not only should the name and logo of Valu-rite be removed from the interior and exterior of the building, all trace of the Valu-rite name and logo should be removed from any and all tangible items. These items include, but are not limited to [sic] signs, shopping bags, cash register receipts, and signs located in the store.

The agreement explicitly gave Caincare six months to complete the name change. Indeed, the owner of Discount Drug testified that Caincare would not be liable for any use of the Valu-Rite name until July 1, six months after the sales agreement was signed. If the name change was not completed within six months, the liquidated damages clause would be triggered. The clause provides for payment of $10,000 in damages for the first violation and an additional $100 for each day Caincare continues to use the name thereafter.

Discount Drug purchased the fax machine in question. An employee of Discount Drug programmed the Valu-Rite name into the fax machine. Neither Discount Drug nor Caincare realized the Valu-Rite name was appearing on the fax header until August 26, 2002, roughly eight months after the sales agreement was signed. Discount Drug notified Caincare about misuse of the Valu-Rite name. After being informed, Caincare promptly corrected the problem. Yet Discount Drug discovered a stack of faxes sent to it between July 1 and August 26 bearing the Valu-Rite name.

There were apparently other disagreements between the parties, and Caincare sued Discount Drug for breach of contract, fraud, conversion, and violations of the Georgia RICO statute. Discount Drug counterclaimed for breach of contract alleging that Caincare continued to use the Valu-Rite name in violation of the sales agreement. Caincare moved for a directed verdict at the close of the evidence and argued that the liquidated damage provision was an unenforceable penalty. The court denied the motion. The jury then rejected all of Caincare's claims and found in favor of Discount Drug on the counterclaim. The jury awarded Discount Drug $15,700 for misuse of the Valu-Rite name and $35,000 in attorney fees.

1. Caincare first contends that the trial court erred by denying its motion for directed verdict regarding the enforceability of the liquidated damage clause. Resolution of these cases can be tricky.[1] The Supreme Court has held that a liquidated damages clause is enforceable if (1) the injury caused by the breach of the contract is difficult or impossible to accurately estimate; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated upon by the parties is a reasonable pre-estimate of the probable loss. *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976), cited by *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 686 (1) (534 SE2d 145) (2000); *Joyce's Submarine Sandwiches v. California &c. Retirement System*, 195 Ga. App. 748, 749-750 (2) (395 SE2d 257) (1990).

At trial, the party who defaults on the contract has the burden of proving the liquidated damages clause is an unenforceable penalty. *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989). A defaulting party can carry this burden by proving any of the three factors is lacking. *Daniels v. Johnson*, 191 Ga. App. 70 (381 SE2d 87) (1989). "The enforceability of a liquidated damages provision in a contract is a question of law for the court which necessarily requires the resolution of questions of fact." (Punctuation omitted.) *Maz Medics v. Satellite Advertising Systems*, 194 Ga. App. 583 (391 SE2d 446) (1990), citing *Liberty Life*, 258 Ga. at 809.[2]

Caincare cannot prevail under the first two prongs of the test. Caincare fails under the first prong because neither party argued at trial or on appeal that it would be easy to estimate damages resulting from misuse of the Valu-Rite name. Caincare fails under the second prong because the sales agreement explicitly states the $10,000 sum and "additional charge" of $100 per day represent "liquidated damages." This contractual language is indicative of the parties' intent for the damages to be liquidated. See *Liberty Life*, 258 Ga. at 809. See also *Oran v. Canada Life Assurance Co.*, 194 Ga. App. 518, 520 (2) (390 SE2d 879) (1990).

The third prong of the test inquires whether the liquidated damage amount is a reasonable pre-estimate of the probable loss.

---

[1] "We note a marked custom among the judges who have had occasion to deal with the question as to whether a sum so named is a penalty or liquidated damages, to begin the discussion with some statement to the effect that the construction of such contracts presents a question of most vexing and perplexing nature; and in conformity to the custom we may as well make the same remark." [Cit.] *Prime Business Investments v. Peacock*, 185 Ga. App. 396 (364 SE2d 106) (1987).

[2] The offending portion of a liquidated damage provision may be struck and other portions enforced if the contract contains a severability clause. *Sun v. Mercedes Benz Credit Corp.*, 254 Ga. App. 463, 468 (562 SE2d 714) (2002).

*Southeastern,* 237 Ga. at 230. The following review of a sample of cases reveals that the touchstone question is whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss of the defaulting party. Deterrence should not factor into the equation. "Where a designated sum is inserted into a contract for the purpose of deterring one or both of the parties from breaching it, it is a penalty." (Citations and punctuation omitted.) *Daniels,* 191 Ga. App. at 71.

When a business defaulted on a lease for telephone equipment, this Court held that a liquidated sum was unreasonable because it allowed the lessor to recover the present value of all future rents and retain proceeds from a sale of the repossessed equipment. *Carter v. Tokai Financial Svcs.,* 231 Ga. App. 755, 758-759 (2) (500 SE2d 638) (1998). The liquidated damages placed the lessor in a far better position than it would have been if the contract had never been breached. Id. See also *Peterson v. P. C. Towers, L.P.,* 206 Ga. App. 591, 593-594 (426 SE2d 243) (1992) (while reduction of accelerated rent payments to present value tends to establish reasonableness, it is unreasonable for a lessor to gain possession of the premises plus a lump sum award of future rent without taking into account either the future rental value of the property or the probability the property will be leased again).

In a case dealing with the breach of an employment contract, this Court held the amount of liquidated damages was unreasonable because the parties made no effort to estimate the probable loss. *Physician Specialists in Anesthesia v. MacNeill,* 246 Ga. App. 398 (539 SE2d 216) (2000). Instead of attempting to estimate the probable loss, the doctor and his employer had referenced the doctor's deferred compensation package to determine the amount of liquidated damages. Id. at 400-402 (1).

In a case dealing with the breach of a commercial property lease, we upheld liquidated damages as reasonable even though the defaulting party was responsible for paying a fee for every day it breached the contract. *Joyce's Submarine Sandwiches,* 195 Ga. App. at 749-750 (2). The leasing agreement required the tenant to pay $2,166 in monthly rent and an additional percentage rent based on the tenant's gross annual sales.[3] When the tenant defaulted, the liquidated damages clause was triggered, requiring payment of the minimum rent, additional percentage rent, and $50 for each day the premises remained vacant. Id. The court upheld the $50 per day provision as a reasonable estimate of what the landlord would likely

---

[3] The percentage rent was ten percent of the tenant's annual gross sales in excess of $260,000. This payment was due on a monthly basis. Id.

lose as a result of a decline in the property value of the shopping center and a decrease in the total amount of percentage rents collected from tenants. Id.

In a case involving the breach of a real estate sales contract, the Supreme Court has ruled the payment of $37,000 earnest money, which represented ten percent of the purchase price, was a reasonable liquidation of damages. *Liberty Life,* 258 Ga. at 809. Based on that opinion, this Court has ruled the payment of $20,000 earnest money, which represented two percent of the purchase price, was reasonable. *Swan Kang,* 243 Ga. App. at 686 (1).

In the present case, Caincare has shown as a matter of law that the liquidated damage amount is not a reasonable estimate of the probable loss caused by the breach. First, the liquidated damages provision entitled Discount Drug to $10,000 on the first day Caincare breached the contract, even though the owner of Discount Drug conceded that Caincare would not be liable for any use of the Valu-Rite name for the first six months. While Caincare could use the Valu-Rite name on signs, labels and faxes for six months with impunity, the first violation after six months would cost Caincare $10,000. Yet the maximum amount any subsequent violation would cost is $100 per day. This disparity in damages depends on the date of the violation, suggesting the clause functions more like a penalty than compensation.

Next, the owner of Discount Drug never explained how the parties calculated damages. When asked how the $10,000 figure was chosen, he testified, "I guess in discussions with my attorneys. I think they asked me about this business of letting him use the name for six months, and I think they brought up the point, well, what if he doesn't change in that time period, is that going to be damaging to you?" When pressed to explain the disparity between the $10,000 sum and $100 per day sum, he testified, "It was there as a deterrent more than anything. We wanted the contract fulfilled and it's sort of like a worst case scenario." A "worst-case scenario" does not constitute a reasonable estimate of probable loss.

Finally, the owner of Discount Drug offered the following formula:

> We need him to do this, we need him to fulfill this, and he might simply say, well, if I just have to pay $100 a day, let me see, that's $3,000 a month and I could still operate as Valu-Rite and that might not be such a bad thing. That's $36,000 a year on a drug store that grossing $2.3 million. Maybe I'll just use his name. So if you hit $10,000 on there first, then you have the additional.

However, this testimony does not prove the parties took any steps to estimate the loss prior to the contract being signed. No justification was given for either the $10,000 or the $100-a-day charge. Instead, the above testimony appears to be an attempt to justify the sum as reasonable after the breach.

In close cases involving a liquidated damage clause, the Supreme Court has advocated interpreting the clause as a penalty. "In cases of doubt, the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage[s] actually shown, rather than a liquidation of the damages." *Fortune Bridge Co. v. Dept. of Transp.*, 242 Ga. 531 (250 SE2d 401) (1978).

Given the failure of the parties to attempt to estimate the loss and the unreasonableness of the sum they picked, we hold that Caincare carried its burden by proving the sum was an "unreasonable estimate of the probable loss" and, thus, an unenforceable penalty. The trial court erred by failing to grant the motion for directed verdict as to whether the liquidated damage clause was enforceable.

When this Court determines that a directed verdict was erroneously denied, it "may order that a new trial be had, as the court may determine necessary to meet the ends of justice under the facts of the case." OCGA § 9-11-50 (e). In *Daniels*, this Court ruled that, following trial, the trial court had erroneously failed to grant a directed verdict on the question of whether a liquidated damage clause was an unenforceable penalty. *Daniels*, 191 Ga. App. at 73 (1). This Court then held "[b]ut since the trial court did not permit seller to establish his actual damages . . . , a new trial must be afforded." Id.

In this case, unlike in *Daniels*, there is no indication that the trial court prohibited Discount Drug from establishing actual damages. Nor did Discount Drug present any evidence of actual damages; in fact on cross-examination, the owner of Discount Drug could not point to any actual damages. Also, there is no indication in the record that Discount Drug sought general damages, actual damages, or nominal damages. The six-page, detailed jury verdict form makes this clear: it only sought liquidated damages. Accordingly, there are no grounds upon which to remand for a new trial on actual or nominal damages; a directed verdict on liquidated damages would have resolved the entire counterclaim. See *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 646 (3) (490 SE2d 124) (1997) (where plaintiff did not seek nominal damages in pre-trial order or at trial, plaintiff was not entitled to award of nominal damages after lost profits and special damages awards were vacated); *Deutz-Allis Credit Corp. v. Phillips*, 193 Ga. App. 79, 80-81 (1) (387 SE2d 34) (1989) (where plaintiff-in-counterclaim failed to prove special damages or

emotional distress damages and sought no nominal damages, trial court should have granted a directed verdict in favor of defendant-in-counterclaim).

2. Discount Drug sought and was awarded attorney fees under OCGA § 13-6-11. Caincare contends on appeal that fees were not proper because under OCGA § 13-6-11, fees are only allowed to Discount Drug on its counterclaim, and the fees were not allocated between defense of Caincare's claims and prosecution of Discount Drug's counterclaim.

Given that in Division 1 we held that Discount Drug was not entitled to prevail on its counterclaim, it cannot recover fees under OCGA § 13-6-11. Under that Code section, a defendant is only entitled to recover fees associated with prosecuting a successful counterclaim. *Langley v. Nat. Labor Group*, 262 Ga. App. 749, 754 (3) (586 SE2d 418) (2003); *Gardner v. Kinney*, 230 Ga. App. 771, 772 (498 SE2d 312) (1998) (where plaintiff-in-counterclaim recovers no damages on his counterclaim, he is not entitled to attorney fees under OCGA § 13-6-11).

*Judgment reversed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 15, 2005.

*John T. Longino*, for appellants.
*Rickie L. Brown*, for appellees.