A89A2274. ORAN v. CANADA LIFE ASSURANCE COMPANY.
(390 SE2d 879)

BANKE, Presiding Judge.

Acting on his own behalf and as a partner of Cobb Medical

Center Partners, Ltd., Dr. Erdogan Oran brought this action against the Canada Life Assurance Company seeking the return of a $37,000 "standby" (or commitment) fee which had been paid to Canada Life in return for a loan commitment. He brings this appeal from an order awarding summary judgment to Canada Life.

The commitment was for a $1,850,000 permanent financing loan on a medical office building developed by Cobb Medical Center Partners ("CMCP"). Under the terms of the written agreement between the parties, the borrower was required upon acceptance of the commitment to pay a 2 percent fee, which was to be refunded "upon the satisfactory delivery of the loan." However, the agreement specified that "if upon the expiry of the commitment, the loan has not been delivered and the commitment not extended, the 2 percent fee shall become the property of the lender as payment on account of liquidated damages which the lender estimates it will suffer as a result of such non-delivery of the loan."

The commitment expired by its terms on September 18, 1986. Ten days earlier, CMCP's attorney wrote Canada Life's attorney a letter listing certain "tasks prerequisite to closing" which had not yet been completed. Among these was the procurement of a lender's title policy which, the letter stated, was expected to be "forthcoming during the day." The letter also made reference to an unresolved claim being asserted against the appellant and CMCP by the project's construction lender for approximately $300,000 in attorney fees and back interest. Canada Life was asked to "acknowledge and approve the subordination of [this] approximately $300,000 in additional claims" by the construction lender, so as to permit compliance with a court order directing "that such claims be secured by the property until such time as resolved before the court."

The construction lender was pursuing the claims in question as counterclaims in a suit filed against it and the project's contractor by the appellant and CMCP. The complaint in that action alleged that the office building "was not of good quality, is not free from faults and defects, is not in substantial conformance with the contract documents and is defective." In an affidavit executed on August 28, 1986, in support of an application for a temporary restraining order to prevent the construction lender from foreclosing on the construction loan, the appellant testified that "[t]he building remains deficient, and in desperate need of repair, renovation and rehabilitation." In a subsequent affidavit, he added that "at least one tenant ha[d] vacated the project" due to the construction defects and that "at least one tenant ha[d] refused to move into the project by reason of the fact that the building was not substantially complete on its stipulated completion date."

Among the documents which Canada Life would have required at

closing were a letter certifying that the project had been completed in accordance with the plans and specifications, an affidavit certifying that there was no pending litigation concerning the office building and an affidavit certifying that no mechanic's liens (which were admittedly in place) existed. As previously indicated, the appellant was also required under the terms of the commitment agreement to obtain a title insurance policy on the property prior to the closing date; and there appears to be no question that this condition was not satisfied. *Held*:

1. The evidence of record establishes without dispute that the appellant was unable to fulfill the conditions precedent for closing the loan prior to the scheduled expiration of the commitment. It follows that the appellee was entitled under the terms of the commitment agreement to retain the $37,000 commitment fee.

2. The appellant contends that the provision authorizing the appellee to retain the commitment fee in the event the loan was not closed constituted an unenforceable penalty provision rather than an enforceable liquidated damages provision. We disagree.

In the seminal case of *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1970), the Supreme Court held that the enforceability of a contractual liquidated damages provision is to be determined by the following "tripartite inquiry": " 'First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.' " The Court further stated in that case that "whether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable." Id. at 228. However, in the recent case of *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989), the Court appears to have abandoned the latter ruling and to have held that the label the parties place on the payment is controlling on the issue of their intention.

*Liberty Life* involved a suit by the prospective purchaser under a real estate sale contract to recover a 10 percent earnest money deposit which, like the commitment fee in the present case, amounted to $37,000. The trial court awarded summary judgment to the defendant-seller on the basis of a contractual provision specifying that this deposit would be "forfeited as full liquidated damages to the seller" in the event the purchaser elected not to close the sale. It was apparent without dispute in that case, as it is in the present case, that the first prong of the *Southeastern Land* test was satisfied, i.e., the injury caused by the breach was "difficult or impossible of accurate estima-

tion." However, this court reversed the trial court's grant of summary judgment to the defendant based on the latter's failure, as movant, to produce evidence tending to show that the $37,000 payment represented a reasonable pre-estimate of "the *amount* of the loss the [seller] might reasonably be expected to suffer in the event of a breach of the contract by the [purchaser]." *Thomas B. Hartley Constr. Co. v. Liberty Life Ins. Co.*, 187 Ga. App. 849, 850 (371 SE2d 657) (1988). Indeed, the only evidence in that case going to the amount of the seller's actual loss consisted of testimony that within five months after the scheduled closing date the defendant had sold the property in question for $92,000 *more* than the plaintiff had contracted to pay for it.

The Supreme Court granted certiorari and reversed, concluding that there was "no question the parties intended to provide for liquidated damages [where] the damages clause was denominated as liquidated by the parties . . . ," and further concluding, without explanation, that "the damages were a reasonable pre-estimate of the probable loss." *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, supra at 809. We interpret this holding to mean that a provision in a real estate sale contract authorizing the seller to retain the purchaser's earnest money deposit in the amount of 10 percent of the sale price as liquidated damages in the event of a breach by the purchaser is reasonable and enforceable as a matter of law. That being so, it would appear to follow that a contractual provision appearing in a loan commitment agreement authorizing the lender to retain a commitment fee in the amount of 2 percent of the loan as liquidated damages for the borrower's failure to close is similarly reasonable and enforceable as a matter of law. If, however, an evidentiary basis for a determination of reasonableness is needed in the present case, we note that the appellee provided one by submitting an affidavit stating that, due to a decline in market interest rates during the period before and after the expiration of the commitment, it suffered actual losses in excess of $60,000 as a result of the appellant's failure to satisfy the conditions for closing the loan. While the appellant maintains that he controverted this evidence by showing that he paid a higher interest rate for the alternate permanent financing which he ultimately obtained in December of 1986 than that which the appellee had agreed to charge, we do not consider that fact to be necessarily inconsistent with the averments contained in the appellee's affidavit. For these reasons, we hold that the trial court did not err in granting the appellee's motion for summary judgment.

3. The appellant contends that the trial court erred in awarding attorney fees and expenses of litigation to the appellee. The award was entered by the court *sua sponte* pursuant to OCGA § 9-15-14, after the appellant had already filed his notice of appeal, and was

based on its conclusion that "[t]he claim of [appellant] against Canada Life Assurance Company [was] utterly without merit and lacked substantial justification." Pursuant to OCGA § 5-6-35 (a) (10), "[a]ppeals from awards of attorney's fees or expenses of litigation under Code Section 9-15-14" are subject to the application procedures set forth in OCGA §§ 5-6-35 (b-i). As the appellant failed to follow those procedures, this enumeration of error presents nothing for review.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 2, 1990 —
REHEARING DENIED FEBRUARY 14, 1990 — 

*Sexton, Turner & Moody, Lee Sexton,* for appellant.
*Hansell & Post, Jule W. Felton, Jr.,* for appellee.