A98A0778. OASIS GOODTIME EMPORIUM I, INC. et al.
v. CAMBRIDGE CAPITAL GROUP, INC.
(507 SE2d 823)

ANDREWS, Chief Judge.

Oasis Goodtime Emporium, Guy Holcomb and Harold Oden (Oasis) appeal from the judgment entered after a bench trial in which the court awarded Cambridge Capital Group (Cambridge) liquidated damages and attorney fees on its breach of contract claim. Oasis argues on appeal that the trial court erred in awarding the liquidated damages under the contract and also argues there was insufficient service of process and improper venue. We find no error and affirm.

The contract at issue is a Loan Commitment for Collateralized Financing agreement (loan commitment) for a loan of 1.3 million dollars from Cambridge to Oasis. The loan commitment was signed by Guy Holcomb as president of Oasis and by Guy Holcomb and Harold Oden individually.

Under the contract, Oasis was to pay Cambridge a travel stipend of $3,500 for an on-site inspection of the collateral, and a loan commitment fee of $50,000. The first installment of the loan commitment fee was $30,000, payable when the parties signed the contract. The second installment of $20,000 was due 30 days after signing the contract. Oasis paid the $30,000 at signing, but did not pay the second installment of $20,000. Holcomb, president of Oasis, testified at trial that Oasis initially wanted to borrow the money from Cambridge

because it had a balloon payment due under a loan from another creditor; but, Oasis was able to restructure the loan with the other creditor and therefore no longer needed the loan from Cambridge.

At the close of the bench trial, the court found in favor of Cambridge on its breach of contract claim and ordered Oasis to pay the remaining $20,000 of the loan commitment fee, $50,000 liquidated damages, and $7,025 in attorney fees. This appeal followed.

1. We first address Oasis's claim that the trial court erred in denying its motion to dismiss for lack of service. The record shows that the specially appointed process server left a copy of the Complaint with Allen Holcomb, the day manager at Oasis Goodtime Emporium. Oasis, in its Answer, stated as its second and third defenses that the court lacked jurisdiction over it because of "insufficient process" and "insufficient service of process."

Oasis never raised the issue again until after Cambridge finished presenting its case at trial. At that point, counsel for Oasis made an oral motion to dismiss for insufficient service. In looking at the transcript of the hearing on the motion, we find that counsel never presented any argument to the trial court as to why Allen Holcomb was not authorized to accept service of the Complaint. Oasis does make an argument in its brief on appeal; however, since the evidence referred to is unsupported by the record below, we cannot consider it on appeal. *Trevino v. Flanders*, 231 Ga. App. 782 (501 SE2d 13) (1998). This is a court for the correction of errors of law committed by the trial court. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court. *Darby v. State*, 230 Ga. App. 32, 33 (495 SE2d 146) (1997).

2. Because we hold the court did have personal jurisdiction over Oasis, we need not address the claim that venue was improper as to defendant Guy Holcomb.

3. Counsel for Oasis also appeared to be raising the issue of service on defendant Oden at the motion to dismiss. According to counsel for Cambridge, Oden was never served and the record shows that Oden raised insufficient service of process in his Answer.

After a party has properly raised such a defense, it may be found waived only if the party later engages in conduct so manifestly indicative of an intention to relinquish a known right or benefit that no other reasonable explanation of his conduct is possible. *Heis v. Young*, 226 Ga. App. 739, 740 (487 SE2d 403) (1997); *Ga. Power Co. v. O'Bryant*, 169 Ga. App. 491, 495 (313 SE2d 709) (1983). Moreover, contrary to Cambridge's assertion, pleading to the merits while at the same time raising the defense of insufficient service of process does not constitute a waiver of the defense. *Roberts v. Bienert*, 183 Ga. App. 751, 755 (360 SE2d 25) (1987).

But, a defendant has the obligation to bring this affirmative defense to the attention of the court at the proper time if he wishes to make an issue of it. *Wheeler's, Inc. v. Wilson*, 196 Ga. App. 622, 625 (396 SE2d 790) (1990) (physical precedent only). In *Wheeler's*, the defendant pleaded insufficient service of process in its Answer, but did not move for a hearing on the issue until after this Court had ruled on its appeal from the trial court's denial of its motion for summary judgment.

Here, defendant Oden participated in discovery and waited until midway through the bench trial of the case before raising the issue again. That was not the proper time as "neither the court nor the opponent was put on notice that this waivable preliminary jurisdictional defense would be insisted on." *Wheeler's*, supra at 623. As this Court pointed out in *Wheeler's*, the orderly disposition of cases demands this conclusion. Id. at 624.

Therefore, we hold that defendant Oden, by his actions, waived any defense of insufficiency of service of process and thus consented to the jurisdiction of the trial court. The trial court did not err in refusing to grant Oden's motion to dismiss.

4. In its final enumeration of error, Oasis argues the trial court erred in enforcing the liquidated damages provision in the contract. "Upon appellate review, factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a). The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." (Citations and punctuation omitted.) *Lyon v. State of Ga.*, 230 Ga. App. 264 (495 SE2d 899) (1998).

On appeal, Oasis enumerates as error only the trial court's finding that the liquidated damages provision was enforceable.[1] This provision reads as follows: "In the event that Lender and/or its affiliate is ready, willing and able and is prepared to fund this Loan in accordance with the agreed terms and conditions, and Borrower uses an alternative source (or sources) of financing and/or funding, debt or equity, to otherwise meet the requirements of the herein-described financial transaction, or Borrower is unable to provide Lender with insurable title to the real estate Collateral from a title insurance pro-

---

[1] Oasis makes three separate assignments of error under this one enumeration in violation of OCGA § 5-6-40. When an appellant asserts more than one error within a single enumeration, this Court may, in its discretion, elect to review none or one or more of the errors. *Toledo v. State*, 216 Ga. App. 480, 482 (455 SE2d 595) (1995). Here, we find no merit to Oasis's second and third arguments and elect to review only the first assertion, that the trial court erred in enforcing the liquidated damages provision because the amount provided for constitutes a penalty.

vider reasonably acceptable to Lender, or Borrower fails to settle this transaction for any other reason, Borrower shall be obligated to pay Lender, simultaneous with such failure to settle, the sum of $50,000.00, exclusive of the Commitment fee and travel and inspection stipend, as liquidated damages, plus any legal fees incurred by Lender in connection with collection of such liquidated damages."

With regard to contract provisions for liquidated damages, OCGA § 13-6-7 provides: "If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." In determining whether a liquidated damages provision is enforceable, this Court looks at three factors: (1) whether the injury caused by the breach is difficult or impossible to estimate; (2) whether the parties intend to provide for damages rather than a penalty; and (3) whether the sum stipulated is a reasonable pre-estimate of the probable loss. *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

Here, Oasis argues the $50,000 was a penalty because it was not a reasonable pre-estimate of probable loss. Cambridge introduced evidence at trial of its losses due to Oasis's failure to close on the loan. Ronald Hirsch, a senior vice-president for Cambridge, testified as to the actual damages suffered by Cambridge because the loan did not close. He stated that the total loan origination fee would have been $117,000, with the $30,000 already paid by Oasis credited toward that amount as well as the other $20,000 of the loan commitment fee. Hirsch said it would have been difficult to estimate the amount of damages caused by the breach because it was difficult to estimate the amount of money Cambridge would receive over the course of the loan. The loan was a two-year loan with a one-year option with no pre-payment penalty and a fluctuating interest rate with 16.5 percent interest as the floor.

Oasis did not introduce any alternative figures as to what would be a reasonable pre-estimate of the loss and, on appeal, points us to no authority from which we could determine that the amount of liquidated damages constitutes a penalty. The burden is on Oasis as appellant to show the trial court erred in accepting Cambridge's figures as estimates of the amount of loss. More importantly, the burden is on Oasis, as the defaulting party, to show the provision is a penalty. *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989).

Oasis's only argument on appeal is that Cambridge "performed precious little" for the amount of money it received. This argument avails it nothing because "[w]here a party seeks damages for violation of a contract, the measure of damages is not what he has suffered by performing his part but what he has suffered by the failure

of the other party to perform his part." *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 644 (278 SE2d 182) (1981). In other words, it is the amount which will compensate the injured party for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. The injured party, insofar as it is possible to do so with a monetary award, is to be placed in the position he would have been in had the contract been performed. *Re/Max of Ga. v. Real Estate Group*, 201 Ga. App. 787, 789 (412 SE2d 543) (1991).

Looking at case law, we find no cases directly on point. In a case with similar facts, *Oran v. Canada Life Assurance Co.*, 194 Ga. App. 518 (390 SE2d 879) (1990), this Court held that an agreement allowing the lender to retain the loan commitment fee of two percent of the loan as liquidated damages was a reasonable pre-estimate of the loss and enforceable as a matter of law. Id. at 521.[2] The court in *Oran* arrived at this conclusion by comparing the facts to those in *Liberty Life Ins. Co.*, supra, in which the court found that allowing the seller in a real estate contract to retain as liquidated damages the purchaser's earnest money deposit in the amount of ten percent of the sale price was reasonable and enforceable as a matter of law. *Oran*, supra at 521; *Liberty*, supra at 809.

Applying *Liberty* to our facts, ten percent of 1.3 million dollars is $130,000; therefore, even including the $50,000 loan commitment fee as part of the liquidated damages, for a total retained by Cambridge of $100,000, we find this is well within the figure found reasonable and enforceable by the court in *Liberty*.

In light of this and for the reasons outlined above, Oasis was unable to show the liquidated damages provision was a penalty because it was not a reasonable pre-estimate of Cambridge's probable loss under the contract. The trial court did not err in enforcing the provision.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 6, 1998.

*Begner & Begner, Alan I. Begner*, for appellants.
*Tammi M. Berden*, for appellee.

---

[2] This loan commitment fee was to be refunded upon satisfactory delivery of the loan. *Oran*, supra at 519. Here, the $50,000 loan commitment fee was to be applied at closing to the loan origination fee of $117,000.