A09A1507. LANCASTER v. STORAGE USA PARTNERSHIP, L.P. et al.

(685 SE2d 474)

BARNES, Judge.

Robert Lancaster, Jr., rented storage space and stored his personal belongings, which had disappeared when he returned for them later. He sued the manager, owner, and previous owner of the self-storage facility for breach of contract and several torts. The trial court granted summary judgment to SecurCare Self Storage, Inc. (SSS), the manager and agent of the current owner, W-3 SecurCare II, LLLP (W-3 SecurCare), holding that despite SSS's default,

---

Lancaster's recovery was limited to a breach of contract claim and his damages were capped at $5,000. Lancaster appeals, contending that the trial court erred in finding his rental contract valid and enforceable against SSS, in construing the contract terms, and in not permitting him to pursue his tort claims despite SSS's default. For the reasons that follow, we affirm the trial court.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute &c.*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

While the procedural issues involved in this case are somewhat complicated, the facts are simple and basically undisputed. In April 2003, Lancaster[1] contracted to rent a 10 x 10-foot storage unit in a facility owned by Storage USA Partnership, L.P. (SUSA). When Lancaster tried to store his property in the unit assigned to him in the contract, D-431, that unit was already being used. SUSA's agent directed him to use the empty unit next door, D-430. SSS noted in its computer that Lancaster was using D-430, and Lancaster placed his belongings in that space, locked it with his own padlock, and began paying for the unit by automatic debit. In December 2003, SUSA sold the business to W-3 SecurCare, after which SSS began managing the business as W-3 SecurCare's agent. In December 2004, when Lancaster went to his unit to retrieve his belongings, a different lock was on the door and his belongings were gone. No one has ever determined what happened to Lancaster's property.

Lancaster sued four defendants as owners or operators of the facility, claiming breach of contract, negligence, fraud, conversion, trespass to chattel, unjust enrichment, and attorney fees, seeking relief "for all damages in an amount not less than $70,000, but in such further amounts that may be proved at trial." Lancaster dismissed two of those defendants and later the trial court allowed him to add W-3 SecurCare as a defendant after discovery revealed that the company was a successor corporation to SUSA. Former owner SUSA and current management company SSS were served but failed to file answers, and Lancaster moved for entry of default

---

[1] Lancaster's executor, Winston Knight, was substituted as the plaintiff after Lancaster passed away.

judgment against SSS. SSS moved to open its default, but after a hearing on the company's defense of insufficient service, the trial court denied the motion. Lancaster consented to opening SUSA's default, then at some point entered into what Lancaster's counsel described at a later hearing as a confidential settlement for an undisclosed sum. SUSA has never been dismissed as a party to this action, however.

SSS moved for summary judgment, denying it had any contractual relationship with Lancaster but admitting it served as W-3 SecurCare's agent. It argued that Lancaster's contract with SUSA limited him to a breach of contract claim for $5,000, and despite SSS's default, Lancaster's complaint was not sufficiently well pled to entitle him to judgment on any of his other claims in tort and equity. Lancaster responded and filed a cross-motion for summary judgment on his claim for $70,000 in damages.

After a hearing, the trial court granted summary judgment to SSS, finding that Lancaster was limited by the rental contract terms to $5,000 damages, to be set off by whatever amount he had recovered from SUSA. Lancaster filed a timely notice of appeal.

1. Lancaster asserts that the trial court erred by not finding that SSS waived its defenses and admitted all of the allegations against it, including Lancaster's contention that he suffered damages "in an amount no less than $70,000." Even if this amount was not liquidated, he asserts, he was entitled to pursue his tort and equity claims against SSS, as well as his claims for punitive damages and attorney fees.

Under OCGA § 9-11-55 (a), if a defendant fails to file a timely answer within the proper time, the plaintiff is entitled to a judgment by default "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury." The Code further provides that if the action is "ex delicto or involves unliquidated damages," the plaintiff must prove the damages before the court, and the defendant has the right to introduce evidence as to damages. While a default operates as an admission of the well-pled factual allegations in a complaint, allegations not well pled, forced inferences, or conclusions of law do not preclude a defendant from showing that, under the facts as deemed admitted, no claim existed that would allow the plaintiff to recover. *Fink v. Dodd*, 286 Ga. App. 363, 365 (1) (649 SE2d 359) (2007).

Here, Lancaster alleged in his complaint that he contracted to rent a particular storage unit, stored his belongings "valued at approximately $70,000" in a different unit, paid his rent, and his property disappeared. He further claimed "on information and belief" that the defendants sold his property at auction. He asserts that the defendants breached their contract with him by renting him

"an unavailable storage unit" and by selling his personal property without notice, and based on these facts, sued for negligence, fraud, conversion, trespass to chattel, bad faith attorney fees, punitive damages, and unjust enrichment.

"[M]ere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law." *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 754 (2) (556 SE2d 517) (2001). Lancaster asserts that his contract with SUSA was invalid because it named a different storage unit from the one he actually used, and therefore he and SUSA had only an oral contract providing he would pay rent in exchange for use of the space with no other applicable contract terms or limitations.

This argument has no merit. The facts pled in Lancaster's complaint established that both parties agreed that Lancaster would use the storage unit he actually used, and also agreed to all the other terms in the written contract. As discussed further in Division 3, the contract limits the storage company's liability to a breach of contract claim for $5,000. A thorough and careful review of the contract and the factual allegations in the complaint reveals that "[a]ll issues dealing with the extent of the duties owed to [Lancaster], whether the duties were breached, the injury which flowed from the breach, and the remedy for any such breach are controlled by [Lancaster's] written [storage] contract." *ServiceMaster Co. v. Martin*, supra, 252 Ga. App. at 754 (2). Because the remedy for the breach was controlled by the parties' contract, the trial court did not err in concluding that Lancaster was limited to the agreed-upon contractual damages.

2. Lancaster argues that the trial court erred in granting summary judgment to SSS because no undisputed evidence established that the contract he signed with SUSA had been properly assigned to W-3 SecurCare. To the contrary, the affidavit of SSS's vice president established that W-3 SecurCare acquired the storage facility from SUSA in December 2003, and that SSS was the facility's property manager. In its verified answer SUSA states that W-3 SecurCare assumed the rental contract at issue here. The rental contract provides that SUSA may assign the contract at any time, and provides that its terms apply to SUSA's successor in interest. Although Lancaster also argues that he had no contract with SSS and his claims against SSS were for torts that arose outside the contract, SSS acted as W-3 SecurCare's agent. All of the duties of the owner and manager arose from the rental contract, which controls Lancaster's remedies for a breach of contract.

3. Lancaster argues that, even if the contract were valid, the trial

court erred in construing it to limit him to $5,000 in liquidated damages, because the provision at issue only required Lancaster to purchase insurance on the goods he stored.

Parties to a contract may agree to limit the amount of damages due if the contract is breached, and are bound by that agreement. OCGA § 13-6-7. Contractual damages are enforceable liquidated damages if (1) the injury caused by a breach of contract is difficult or impossible to estimate; (2) the parties intend to provide for damages and not a penalty; and (3) the sum stipulated is a reasonable pre-estimate of probable loss. *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 644 (4) (507 SE2d 823) (1998).

Under the heading "**INSURANCE OBLIGATIONS/LIMITA-TION OF LIABILITY**," the contract in this case provided:

> **NO BAILMENT IS CREATED HEREUNDER. LESSOR IS NOT A WAREHOUSEMAN ENGAGED IN THE BUSINESS OF STORING GOODS FOR HIRE, AND ALL PROPERTY STORED WITHIN OR ON THE SPACE BY TENANT OR LOCATED AT THE FACIL-ITY SHALL BE AT TENANT'S SOLE RISK AND SUPERVISION.** TENANT MUST OBTAIN ANY INSUR-ANCE DESIRED AT TENANT'S EXPENSE. TENANT AGREES THAT IN NO EVENT SHALL THE TOTAL VALUE OF ALL PROPERTY STORED EXCEED $5,000 UNLESS THE TENANT HAS INSURANCE PROTECT-ING THE PROPERTY. LESSOR STRONGLY RECOM-MENDS THAT TENANT SECURE HIS/HER OWN INSURANCE TO PROTECT HIMSELF/HERSELF AND HIS/HER PROPERTY AGAINST ALL PERILS OF WHAT-SOEVER NATURE. LESSOR SHALL NOT BE LIABLE TO TENANT . . . FOR ANY PERSONAL INJURIES OR PROPERTY DAMAGE, OR LOSS FROM THEFT, LESSOR'S NEGLIGENCE, . . . OR ANY OTHER CAUSE WHATSOEVER, TO THE EXTENT ALLOWED BY LAW.

(Emphasis in original.) The agreement further provided (also in capital letters, unlike the majority of the contract), "TENANT HEREBY AGREES TO INDEMNIFY AND HOLD HARMLESS THE LESSOR FROM AND AGAINST ANY AND ALL CLAIMS FOR DAMAGES OR LOSS TO PROPERTY. . . ."

> [If] parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpa-tion to the bargaining parties who must be deemed to have

agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.

(Citations and punctuation omitted.) *Vasche v. Habersham Marina*, 209 Ga. App. 263, 264-265 (1) (433 SE2d 671) (1993); *Whipper v. McLendon Movers*, 188 Ga. App. 249 (1) (372 SE2d 820) (1988). A self-storage company has no way of knowing what goods its tenants will store in their rental units, and thus cannot accurately estimate possible damages. The only reason to direct lessees not to store items worth more than $5,000 without obtaining insurance coverage is to cap the lessor's liability. The trial court did not err in concluding that the parties agreed in the rental contract to liquidated damages of $5,000.

4. Lancaster's arguments that he did not initial the contract provision regarding insurance and that the contract gave him the right to sue SSS as the "agent of the tenant" are without merit.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED OCTOBER 21, 2009.

*Kurt R. Hilbert*, for appellant.
*J. Michael McGarity, Shawn F. Bratton*, for appellees.