**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A1851. MMA CAPITAL CORPORATION v. ALR
      OGLETHORPE, LLC et al.

BARNES, Presiding Judge.

This case arose after the 2009-2010 reorganization of loans related to a major

property development in Savannah. In 2013, lender MMA Capital Corporation and

MMA/PSP Savannah River, LLC, sued ALR Oglethorpe, LLC, and several related

limited liability companies[1] (collectively, ALR) and six individuals,[2] contending that

the defendants had breached several contracts and failed to pay sums due under a

promissory note. The trial court granted MMA Capital's motion for summary judgment

---

[1] The related LLCs are Oglethorpe Landing Holdings, LLC, Ambling Oglethorpe Landings, LLC, Ambling Development Partners Holdings, LLC, Ambling Development Holdings, LLC, Ambling Land & Resort Holdings, LLC, Oglethorpe Funding, LLC, and The Villages at Oglethorpe Landings, LLC. The latter two entities were later dismissed by consent with prejudice.

[2] Stephen M. Brooks, Eddy Benoit, Jr., Michael H. Godwin, Rhett J. Holmes, R. Ryan Holmes, and F. Kevin King.

on the promissory note and the individual defendants' guaranties of that note, and both sides appealed.

The defendant borrowers argued in their direct appeal that the trial court erred in granting summary judgment to MMA Capital because the promissory note lacked consideration, and erred in denying their motion to sever and dismiss or transfer the claims for lack of venue. This court affirmed without opinion that portion of the trial court's order finding that the defendants were liable under the notes and guaranties and denying their motion to sever and dismiss or transfer. *ALR Oglethorpe, LLC v. MMA Capital Corp.*, 334 Ga. App. _____ (A15A1623, decided November 20, 2015); cert denied, S16C0504, March 7, 2016. In this cross-appeal, MMA Capital argues that the trial court made errors in calculating the interest award, failed to award a definite amount of late fees, and failed to rule on its claim for attorney fees. For the reasons that follow, we vacate the trial court's judgment and remand the case for further proceedings consistent with this opinion.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

2

(Citation omitted.) *Salahat v. Fed. Deposit Ins. Corp.*, 298 Ga. App. 624, 625 (680 SE2d 638) (2009).

So viewed, the record shows that an affiliate or predecessor of ALR assembled 55 acres along the south bank of the Savannah River for a development project known as the Savannah River Landing. ALR eventually consolidated its financing with a $61 million loan from MMA Capital, secured by the property. Title issues arose, delaying the development,[3] and in 2008, ALR defaulted on the loan. MMA Capital restructured the loan and increased the available credit to $81 million, but ALR's attempts to begin high-rise construction projects with other parties were hampered by a national credit crisis. In February 2009, ALR informed MMA Capital that it would not be able to make its next interest payment.

ALR and MMA Capital then negotiated a series of contracts, ending with a settlement agreement between lenders MMA Capital and PSPIB Realty US Inc. and

---

[3]In a separate action, ALR and individual investors sued several property sellers for failing to disclose the existence of an easement that burdened a parcel of real estate, and this court affirmed without opinion the trial court's grant of summary judgment to the sellers. *ALR Oglethorpe, LLC v. Peeples*, 334 Ga. App. ___ (Case No. A15A1358, decided Nov. 20, 2015). ALR also sued several other entities involved in the defective title search, and this court affirmed the trial court's grant of summary judgment to the defendants in that case. *ALR Oglethorpe, LLC v. Henderson*, ___ Ga. App. ___ (Case No. A15A2336, decided March __, 2016).

3

borrowers ALR, Oglethorpe Landings Holdings, LLC, and Ambling Oglethorpe Landings, LLC, under which a new entity, MMA/PSP Savannah River, LLC, would take title to the property. ALR and MMA Capital entered into an indemnity agreement, under which ALR 's completion bonds continued. In addition, ALR and Ambling Oglethorpe Landings gave MMA Capital a $2 million promissory note, and the individual defendants gave personal guaranties on both the Indemnity agreement and the note. All of these contracts, which were signed on February 16, 2010, are cross-referenced and lengthy.

After the sale closed on February 16, 2010, ALR stabilized the site, but apparently no further development work occurred during the next several years, although the parties disagreed about which entity was responsible for the failure to proceed. In August 2011, the City threatened to call ALR's bonds to complete the project. On January 3, 2012, MMA's attorney made a demand for payment from ALR under the indemnity agreement, based on the City's threat to call the bonds. In February 2013, MMA Capital filed this suit, claiming among other things that ALR had defaulted on the promissory note and the individual defendants were liable on their guaranties of the note.

The defendants answered, denying liability. Following discovery, MMA Capital moved for summary judgment against ALR on the note and against the individual defendants on their personal guaranties, seeking the unpaid principal, interest, late fees, and attorney fees. In support of its motion, MMA Capital attached the affidavit of its vice president identifying the note as a business record and calculating the outstanding principal balance, the unpaid interest at both the pre- and post-default rates, the per diem accrual rates, and the late fees. The defendants argued in response that MMA Capital had breached the party's settlement agreement and that the note was therefore not supported by consideration. In an order issued on February 19, 2015, the trial court found that the note was due and in default, and that the higher default interest rate and late fees were not unenforceable penalties. It awarded MMA Capital the principal amount sought "plus unpaid contract interest through 8/16/13," which is the date that the vice president signed the affidavit, but did not address MMA's claim for attorney fees.

1. MMA Capital argues that the trial court erred in failing to award pre-default and post-default interest up to the date of the judgment instead of the date the vice president signed the affidavit submitted in support of MMA's motion for summary judgment. The defendants respond that an award of post-default interest of an additional

5

3 percent, in addition to the pre-default interest rate of 5 percent, is an unenforceable penalty. They also argue that any injury is not difficult or impossible to estimate accurately under the note.

The promissory note provided that interest on the principal of $2 million accrued at the fixed rate of 5 percent per year. Payments of a certain amount would be due quarterly, beginning February 1, 2010, with a balloon payment of the remaining principal and accrued interest due on January 1, 2020. If a default occurred and was not cured within the time allotted, "default interest" would accrue at a rate of either an additional 3 percent per year or the highest rate of interest permitted by law, whichever was the lesser amount.

The trial court found that MMA Capital had established a prima facie right to recover the amount owed on the loan. *Collins v. Regions Bank*, 282 Ga. App. 725, 726 (639 SE2d 626) (2006) (plaintiff who produces promissory note and shows its execution is entitled to judgment as matter of law unless defendant can establish defense). The trial court also found that the default interest rate of 3 percent in addition to the contract interest rate of 5 percent was not an unenforceable penalty, but did not identify the specific sum of interest to which MMA Capital was entitled.

6

"If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." OCGA § 13-6-7.

> In deciding whether a contract provision is enforceable as liquidated damages, three factors must exist. The injury must be difficult to estimate accurately, the parties must intend to provide damages instead of a penalty, and the sum must be a reasonable estimate of the probable loss. "A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." Restatement (Second) of Contracts, § 356 (1).

(Citation omitted.) *AFLAC, Inc. v. Williams*, 264 Ga. 351, 354 (2) (444 SE2d 314) (1994).

"[T]he enforceability of a liquidated-damages provision in a contract is a question of law for the court." (Citation omitted.) *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989). And the burden is on ALR as the defaulting party to show that the provision is a penalty. Id.

The defendants' argument that the post-default interest rate constitutes an unenforceable penalty is unpersuasive. In holding that the post-default interest provision in the note was not a penalty, the trial court cited OCGA §§ 7-4-2 and 7-4-18. OCGA § 7-4-18 (a) provides that an entity charging more than 5 percent interest per month (60

7

percent interest per year) is guilty of a misdemeanor, but otherwise, under OCGA § 7-4-2 (a) (1) (B), parties to a loan of $250,000 or more may "establish by written contract *any rate of interest*, expressed in simple interest terms or otherwise, and charges to be paid by the borrower or debtor." (Emphasis supplied.) The note in this case set the post-default interest rate at only 3 percent higher than the pre-default rate of 5 percent, and the total rate of 8 percent per year is well within the legal limit of 60 percent. We have previously affirmed summary judgments to lenders even when the post-default interest rate was substantially higher than the pre-default rate, although we have found no cases specifically addressing whether a contract providing for payment of a higher interest rate after default is a penalty or not. See, e.g., *Dawson Pointe, LLC v. SunTrust Bank*, 312 Ga. App. 338 (718 SE2d 570) (2011) (pre-default interest rate was 0.25 percent over prime rate; post-default rate was additional 18 percent over prime).

MMA Capital also presented sufficient evidence for the trial court to have calculated the total amount of interest due up to the date of the judgment. In her affidavit, MMA's vice president presented evidence showing the amount of contract interest at 5 percent that was due on August 16, 2013 ($288,274.32), the amount that would accrue each day thereafter at the rate of 5 percent ($266.92), the amount of default interest at 3 percent that was due on August 16, 2013 ($172,964.59), and the

8

amount that would accrue each day thereafter at the rate of 3 percent ($160.15). See *Dawson Pointe*, 312 Ga. App. at 339 ("[W]e have held that a bank employee's uncontested affidavit setting forth the amount of interest that had accrued authorized an award of interest as a matter of law, where, as here, the defendant never came forward with contrary evidence").

Accordingly, while we affirm the trial court's finding that MMA Capital was entitled to an award of pre- and post-default interest, we must vacate the judgment and remand this case for the trial court to perform those calculations and issue a judgment setting forth the amount of interest due as of the date of its judgment, rather than the amount due as of the date that the affidavit of MMA's vice president was signed. See *Ware v. Renfroe*, 231 Ga. App. 529, 533 (3) (499 SE2d 907) (1998) (remanding for calculation of prejudgment interest).

2. MMA Capital also argues that the trial court erred in failing to award it a specific amount of late fees, despite finding the applicable contract provision enforceable. The defendants respond that the late fee provision is an unenforceable penalty, because damages from the breach of a promissory note are easy to calculate, because the provisions appears to be designed to deter non-payment rather than estimate damages, and because the sum is not a reasonable estimate of probable loss.

9

The note provided that

[a] late charge shall be due and payable in the amount of five percent (5%) of the amount of any installment or payment of interest and /or principal not paid within five (5) days of the date on which said installment or payment was due. . . . Maker acknowledges and agrees that the late charge herein provided is not a charge in the nature of interest imposed for the use of money advanced under this Note; rather, the late charge is imposed to compensate Holder for the expense, inconvenience and economic frustration experienced by Holder as a result of Maker's failure to make timely payments due hereunder, and is a reasonable forecast and estimate of Holder's actual damages and loss on account of such delinquent payment.

Regarding this contract provision, the trial court held,

Upon review of the record and the "Late Charge" provision in the New Note, the Court finds the provision reasonable and intended by the Parties to the New Note. In such a complex transaction and large loan amount of the New Note for the Savannah River Landing Project the injury caused by the breach of non-payment would be difficult to estimate. In executing the New Note and doing so with the advice of Counsel, the Defendants intended for this Late Charge to apply and thought it was ... reasonable. The Court finds that the enforceability of this provision is allowed.

While the defendants state that the injury caused by any breach of the note could easily be calculated, it does not then describe any such easy calculations. Although the

10

defendants also argue that the late fees provision is "in no way a pre-estimate of the probable loss stemming from a default" on the note, it does not address the fact that the note itself recites that 5 percent of the past-due amount was a reasonable estimate of damages and loss resulting from a late payment. Nor do the defendants acknowledge the contract's recitation that the late fee was to compensate MMA Capital for the expense, inconvenience, and economic frustration that would be caused by ALR's failure to make timely payments. "[The defendants] did not introduce any alternative figures as to what would be a reasonable pre-estimate of the loss and, on appeal, point[] us to no authority from which we could determine that the amount of liquidated damages constitutes a penalty." *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 644 (4) (507 SE2d 823) (1998).

"Of course, whether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable." *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 228 (227 SE2d 340) (1976). "[W]hat the courts look at is the real intention of the parties as it is to be gathered from the language they have used." *Martin v. Lott*, 144 Ga. 660, 663 (87 SE 902) (1916). One consideration is whether the contract allows both liquidated *and* consequential damages:

11

> A non-breaching party who has agreed to accept liquidated damages cannot elect after a breach to take actual damages should they prove greater than the sum specified. The breaching party cannot complain that the actual damages are less than those specified as liquidated damages. The liquidated damages become the maximum as well as the minimum sum that can be collected.

(Citation and punctuation omitted.) *Southeastern Land Fund*, 237 Ga. at 228. Another consideration is whether the amount of the late fee "is so unreasonable, when applied to the other paragraphs of the contract (if it can be applied to them), as to render it void as being excessive and unreasonable." *Floding v. Floding*, 137 Ga. 531, 534 (73 SE 729) (1912). Here, the note does not give MMA Capital the right to sue ALR for additional consequential damages in addition to the late fee, and the specified amount (5 percent of each late payment, which totaled $38,305.70) is not excessive and unreasonable as a matter of law.

While the trial court did not err in finding the note's late fee provision to be enforceable, it did err in failing to award to MMA Capital the amount of late fees due as of the date of the judgment. The information necessary to make that determination is contained within the affidavit of MMA's vice president. Accordingly, the trial court

12

is also directed upon remand to determine the amount of the late fees due as of the date of the judgment, based on the evidence MMA Capital presented.

3. Finally, MMA Capital argues that the trial court erred in failing to award it reasonable attorney fees under either the note or OCGA § 13-1-11. The note provide that "[i]n the event this Note, or any part thereof, is collected by or through an attorney-at-law, Maker agrees to pay all costs of collection including, but not limited to, reasonable attorney[] fees." MMA Capital sought attorney fees under the terms of the note and under OCGA § 13-1-11 in its complaint and in its motion for summary judgment. MMA Capital argues on appeal that it complied with the notice requirements of the statute and that, under the version of OCGA § 13-1-11 in effect when the note was signed, it is entitled to attorney fees of 15 percent of the first $500 owed and 10 percent of the amount due in excess of $500. Because the trial court did not rule on MMA's attorney fee claim, however, the defendants are correct that this court has nothing to review as far as the merits of the attorney fee claim, which remains pending below.

*Judgment vacated and case remanded with direction. Ray and McMillian, JJ., concur.*

13