[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13567

_____

SIS, LLC,

Plaintiff-Counter Defendant
Appellant-Cross Appellee,

*versus*

STONERIDGE SOFTWARE, INC.,
ERIC NEWELL,
SCOTT BOEDIGHEIMER,

Defendants-Counter Claimants
Appellees,

STONERIDGE HOLDINGS, INC.,

Defendant-Counter Claimant
Appellee-Cross Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-01816-SDG

_____

Before JORDAN, ROSENBAUM, Circuit Judges, and SCHLESINGER,[*]
District Judge.

PER CURIAM:

This case involves a contractual dispute between SIS, LLC, a software service provider, and its subcontractor, Stoneridge Holdings, Inc., in what was at the time one of the biggest deals involving the implementation of the software program Microsoft Dynamics AX for APi Group, Inc. ("APi"), a construction conglomerate. The dispute resulted in litigation between SIS and Stoneridge.

The district court held that the liquidated damages provision in the mutual confidentiality agreement executed by SIS and Stoneridge was unenforceable under Georgia law. According to the

_____

[*] The Honorable Harvey Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

district court, the liquidated damages provision did not employ a reasonable method for estimating the probable loss suffered by SIS given that it broadly covered all profits directly or indirectly realized by Stoneridge, and not the actual loss that SIS suffered. After an eight-day trial, the jury found in part that Stoneridge breached the mutual confidentiality agreement and awarded SIS $85,000 in nominal damages.

SIS now appeals the enforceability of the liquidated damages provision, and Stoneridge cross-appeals the district court's refusal to reduce the jury's nominal damages award from $85,000 to $400, the cost of filing the action. We consider two discrete questions (1) whether a liquidated damages provision that was based on the non-breaching party's direct or indirect profits is enforceable under Georgia law; and (2) whether an award of $85,000 in nominal damages contravenes Georgia law. After a review of the parties' briefs and the record, and with the benefit of oral argument, we answer both questions in the negative and affirm.

## I

### A

SIS and Stoneridge are both software companies. SIS works mainly in the construction industry, where it helps companies select and use computer software that links and manages all facets of their business such as their operations, payroll, and accounting. Stoneridge, on the other hand, provides training services related to Microsoft software packages like Microsoft Dynamics AX—the

software at the center of this case. Stoneridge has extensive experience with Microsoft Dynamics AX and has been recognized by Microsoft as an expert in this field.

Before 2014, APi, a large conglomerate of construction companies, wanted to replace its various software systems with an enterprise resource planning software program, such as Microsoft Dynamic AX, that managed many aspects of its business within a single program. Following a request for proposal by APi, SIS approached Stoneridge to work as a subcontractor on the project. SIS and Stoneridge then began collaborating on the bid for the project and negotiating a subcontract agreement.

To facilitate their negotiations, SIS and Stoneridge entered into a mutual confidentiality agreement ("MCA"). The MCA prohibited a party receiving confidential information from accessing, reproducing, disclosing, or using that information for purposes unrelated to the business relationship between the parties. Importantly, § 5 of the MCA contained a liquidated damages provision, which stated: "Receiving party agrees that if it breaches this Agreement, Disclosing Party shall be entitled to an accounting and payment of all forms of compensation or benefits which Receiving Party *directly or indirectly* realizes as a result of such breach." (emphasis added).

SIS ultimately won the bid to implement the Microsoft Dynamics AX software for APi. SIS and Stoneridge exchanged drafts of a subcontract agreement, but they never signed a final contract. Stoneridge did not agree with SIS' final estimated hours of work

for its employees, which was considerably less than what it had originally agreed to. The parties' negotiations eventually failed and Stoneridge informed SIS that it no longer intended to go forward with the subcontract agreement.

Notwithstanding Stoneridge's withdrawal, SIS proceeded with the Microsoft Dynamics AX's software project for APi. SIS, however, had some performance issues during the initial analysis phase of the project and its relationship with APi deteriorated. As a result of SIS' performance, APi ended its engagement with SIS and began looking for a replacement for the subsequent implementation phase of the project. To this end, APi communicated with Stoneridge that it was interested in having it take over the project and scheduled a meeting. A day before the meeting between Stoneridge and APi, Scott Boedigheimer, Stoneridge's vice-president of business development, sent two emails to Eric Newell, Stoneridge's president, and Cody Marshall, another Stoneridge employee. One of the emails contained an organizational chart outlining SIS' implementation plan for the APi project. The other email contained a listing of some of SIS' proposed prices for the APi implementation. These two emails became the basis of SIS' claims against Stoneridge.

APi then hired Stoneridge to take over the project. In order to facilitate a smooth transition, SIS and APi negotiated a transition procedure, which was memorialized as a settlement agreement in which APi paid SIS the full amount that was due under its contract with SIS. Additionally, SIS was permitted to remain as the partner

of record with Microsoft for the project, which permitted SIS to continue earning commissions for the project despite its termination by APi. SIS received approximately $1.3 million in partner-of-record commissions.

## B

After receiving all the commissions as partner of record, SIS filed suit against Stoneridge and against Mr. Boedigheimer and Mr. Newel, individually. SIS' second amended complaint, which was the operative complaint for most of the action, asserted claims for (1) breach of contract, (2) promissory estoppel, (3) negligent misrepresentation, (4) fraud, (5) tortious interference with economic advantage, and (6) misappropriation of trade secrets.[1]

Stoneridge asserted a counterclaim against SIS for services provided.

After the defendants moved to dismiss SIS' second amended complaint, the district court dismissed SIS' tortious interference claim. Then, at summary judgment, the district court dismissed each of SIS' claims except those for breach of contract and misappropriation of trade secrets because there were issues of material fact as to those claims. The district court also ruled that the

---

[1] SIS' claim for breach of contract was pled under the subcontract agreement, but in the event the subcontract agreement was unenforceable, SIS alleged a breach of the MCA. Additionally, SIS' claims for promissory estoppel, negligent misrepresentation, and fraud were pled in the alternative to its claim for breach of the subcontract agreement.

subcontract agreement could only be enforced as an oral agreement. Consequently, SIS' claims for breach of contract and misappropriation of trade secrets proceeded to trial along with Stoneridge's counterclaim.

A month before the trial was set to begin, and four years after filing the lawsuit, SIS completely shifted its view of the case and sought leave of court to file a third amended complaint. Although SIS continued to pursue its claim for misappropriation of trade secrets, it sought to pursue its claim for breach of contract under the MCA instead of the oral subcontract agreement. The district court permitted the amendment, but only to allow SIS to remove allegations related to the subcontract agreement. The district court also permitted the parties to submit briefs before the trial started given the significant restructuring of the case on the eve of trial. The defendants' trial brief, which was filed the day before trial began, argued in part that the liquidated damages provision in the MCA was unenforceable.

## C

At the end of the first day of the jury trial, the district court discussed with the parties the issue raised in Stoneridge's trial brief regarding the enforceability of the liquidated damages provision in the MCA. The following day, the district court expressly asked SIS whether it wanted to respond in writing or whether it wanted to present argument. SIS responded that it preferred to have argument. Thus, the district court set the argument for the subsequent

morning and asked SIS' counsel "not to focus the jurors or bring attention to [the liquidated damages] provision in [the] MCA."

The following day, the district court heard argument on the enforceability of the liquidated damages provision in the MCA. After hearing the parties' arguments, the district court ruled that § 5 of the MCA was an unenforceable liquidated damages provision under Georgia law. Specifically, the district court concluded that the liquidated damages provision did not employ "a reasonable method of estimating the probable loss." According to the district court, the "provision broadly covered profit, directly or indirectly, realized from the breach," and it also "violate[d] established Georgia law that only actual damages are permitted for breach of contract." Therefore, the district court held that "the liquidated damages provision [was] unenforceable because it [did] not provide a reasonable pre-estimate of the loss that would have been suffered by SIS" and that "it was designed to work as a deterrence or a penalty rather than as damages[.]" App. at 744.

After eight days of trial, the jury returned a mixed verdict. The jury found in favor of SIS on its claim that Stoneridge breached the MCA and awarded SIS $85,000 in nominal damages. Additionally, the jury found in favor of Stoneridge on SIS' trade secrets claim and on Stoneridge's counterclaim for services provided.

## D

SIS and Stoneridge filed various post-trial motions. SIS filed a motion for attorneys' fees and expenses under O.C.G.A. § 13-6-

11.  Stoneridge also filed a motion for judgment as a matter of law or, in the alternative, remittitur, seeking to reduce the nominal damages awarded to SIS to the $400 filing fee.  Additionally, Stoneridge filed a motion for Rule 11 sanctions against SIS for frivolously litigating its claim for breach of the subcontract agreement for four years only to abandon the claim a month before trial.  Finally, Stoneridge filed an objection to SIS' bill of costs arguing that SIS was not the prevailing party and that it had failed to substantiate its costs with receipts.

The district court ruled on the parties' post-trial motions in an omnibus order.  The district court sustained Stoneridge's objections to SIS' bill of costs and denied the remaining motions on various grounds.  First, the district court denied SIS' motion for attorneys' fees because it found that Stoneridge "neither acted in bad faith nor was stubbornly litigious with respect to the MCA claim."  Second, the district court denied Stoneridge's motion for judgment as a matter of law, or, in the alternative, remittitur because under Georgia law a reasonable amount of nominal damages "depends on the circumstances of the case and is up to the jury to decide."  The district court declined to disturb the jury's verdict on nominal damages because the jury was not confused about the court's instruction on those damages, and under Georgia's "flexible" definition of nominal damages, "courts have approved nominal damages awards of up to at least $625,000."  Finally, the district court denied Stoneridge's motion for Rule 11 sanctions because "SIS had a factual basis for its claim that Stoneridge breached the subcontract

agreement, its theory was reasonable, and there [was] no evidence it pursued this claim for an improper purpose."

This appeal followed.

## II

SIS appeals the district court's ruling that § 5 of the MCA is an unenforceable liquidated damages provision, and Stoneridge cross-appeals the denial of its motion for judgment as a matter of law or, in the alternative, remittitur. We hold that the district court did not err in concluding that the liquidated damages provision in the MCA was unenforceable or in refusing to reduce the jury's $85,000 nominal damages award. We therefore affirm.

## A

We begin by addressing the enforceability of the liquidated damages provision in the MCA under Georgia law. In Georgia, whether a liquidated damages clause is valid and enforceable is a question of law, therefore we review the issue *de novo*. *See Nat'l Serv. Indus., Inc. v. Here To Serve Rest., Inc.*, 695 S.E.2d 669, 671 (Ga. Ct. App. 2010) ("Determining whether a liquidated damages provision is enforceable is a question of law."). *See also Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019) ("The interpretation of a contract is a question of law that we review *de novo*.").

SIS argues that the liquidated damages provision in the MCA was enforceable because the evidence presented at trial established that SIS' lost profits from the breach were commensurate with

Stoneridge's benefit. Specifically, SIS argues that (1) SIS and Stoneridge shared common rates and expenses; (2) Georgia courts do not require exactitude in estimating probable losses for purposes of liquidated damages; and (3) SIS would not have a remedy without Stoneridge's profits as a measure. SIS further argues that the liquidated damages provision is not "overly broad," and that it is an estimate of "actual," not disgorgement damages.

Stoneridge responds that the MCA's liquidated damages provision is unenforceable as a matter of law in part because it does not set a reasonable pre-estimate of SIS' damages given that it "impermissibly uses Stoneridge's 'compensation and benefit' as a measurement of SIS' injury." According to Stoneridge, § 5 of the MCA seeks to recover for SIS the direct and indirect profits earned by Stoneridge under the guise of liquidated damages.

## B

"As a threshold matter, Georgia law allows parties to provide for liquidated damages in their contracts, and unless the provision violates some principle of law, the parties are bound by their agreement." *Crown Series, LLC v. Holiday Hosp. Franchising, LLC*, 851 S.E.2d 150, 153 (Ga. Ct. App. 2020) (internal quotation marks and citation omitted). *See also* O.C.G.A. § 13–6–7 ("If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby."). The Georgia Supreme Court has held, and the parties agree, that a liquidated damages clause is enforceable if (1) the injury caused by the breach

of the contract is difficult or impossible to accurately estimate; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated upon by the parties is a reasonable pre-estimate of the probable loss. *See Se. Land Fund, Inc. v. Real Est. World, Inc.*, 227 S.E.2d 340, 343 (Ga. 1976). If a liquidated damages provision fails to meet any of these elements, it is deemed unenforceable under Georgia law. *See Ultra Grp. of Cos., Inc. v. S&A 1488 Mgmt., Inc.*, 849 S.E.2d 531, 534 (Ga. Ct. App. 2020).

The crux of the parties' dispute here focuses on the third element. Under this element, the "touchstone question is whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss of the defaulting party." *Caincare, Inc. v. Ellison*, 612 S.E.2d 47, 50 (Ga. Ct. App. 2005). We agree with the district court that the liquidated damages provision here is not a reasonable pre-estimate of the probable loss.

The formula employed in § 5 of the MCA is not a reasonable method for approximating the probable loss because it is based entirely on the breaching party's profits, and not on the injury suffered by the non-breaching party. In other words, § 5 of the MCA mismatches the damages awarded to SIS and the damages actually suffered by it. This discrepancy directly contravenes the traditional principle of contract law that "damages should put the injured party in the position he would be in had the contract been performed." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1373 (11th Cir. 2021) (applying Georgia law). The liquidated

damages provision here stands that principle on its head because it places SIS, the nonbreaching party, in a far better position than it would have been if the contract had never been breached by Stoneridge. For example, under § 5 of the MCA, SIS is entitled to "all forms of compensation or benefits which [Stoneridge] *directly or indirectly* realizes as a result of such breach." *See* R. at 607 (emphasis added). This liquidated damages provision therefore resembles a disgorgement remedy, "meaning that it permits a plaintiff to recover the defendant's profits from breach, even if they exceed the provable loss to the plaintiff from the defendant's defaulted performance," which is "not an available remedy for breach of contract under Georgia law." *AcryliCon USA, LLC*, 985 F.3d at 1372 (internal quotation marks and citation omitted). Because § 5 of the MCA gives SIS all direct or indirect profits earned by Stoneridge irrespective of the actual profits that SIS lost, it does not provide a reasonable pre-estimate of the probable loss.

This liquidated damages provision instead functions more like a penalty than a reasonable pre-estimate of the probable loss. Georgia law is clear that "[d]eterrence should not factor into the [liquidated damages] equation." *Caincare, Inc.*, 612 S.E.2d at 50. Indeed, "[w]here a designated sum is inserted into a contract for the purpose of deterring one or both of the parties from breaching it, it is a penalty." *Id.* (internal quotation marks and citation omitted). Given the disconnect between the damages provided for by § 5 of the MCA and the actual damages suffered by the non-breaching party, there is little doubt that this liquidated damages

provision functions more like deterrence than damages. *See id.* at 51 (explaining that a "disparity in damages" suggested that a liquidated damages clause functioned more like a penalty than compensation). Accordingly, we agree with the district court that the liquidated damages provision in the MCA is an unenforceable penalty.[2]

## C

We now turn to SIS' principal argument against the district court's ruling. SIS relies primarily on two cases, *Crown Series, LLC*, 851 S.E.2d at 156, and *Ramada Franchise Systems, Inc. v. Motor Inn Investment Corp.*, 755 F. Supp. 1570, 1577-79 (S.D. Ga. 1991), to argue that a breaching party's profit is an appropriate measure of probable loss. SIS' reliance on these two cases, however, is unpersuasive because the liquidated damages provisions in those cases are distinguishable from the provision here.

*Crown Series* involved the breach of a hotel license agreement. *See* 851 S.E.2d at 152. The liquidated damages provision in that case applied a formula that provided the licensor with the fees it should have gotten for an agreed upon period of time based on

---

[2] We do not view this as a close case, but even if it was, the Georgia Supreme Court has advocated interpreting a close liquidated damages provision as a penalty. *See Fortune Bridge Co. v. Dep't of Transp.*, 250 S.E.2d 401, 402 (Ga. 1978) ("In cases of doubt the courts favor the construction which holds the stipulated sum to be a penalty and limits the recovery to the amount of damage[s] actually shown, rather than a liquidation of the damages." (citation omitted)).

the actual track record of that hotel leading up to the breach. *See id.* Similarly, in *Ramada Franchise*, a case involving a breach of a franchise agreement, the liquidated damages provision applied a formula that used the percentage of gross room sales computed over the last two years that the franchise was in existence. *See* 755 F. Supp. at 1579. Significantly, in both *Crown Series* and *Ramada Franchise*, the liquidated damages clauses were (1) limited in time for the length of the contract; (2) predicated on a formula that used discrete variables; and (3) contemplated payment that would have been paid if the agreement had not been breached. *See Crown Series, LLC*, 851 S.E.2d at 152; *Ramada Franchise Sys., Inc.*, 755 F. Supp. at 1572.

The liquidated damages provision here, on the other hand, does not contain any of the limiting characteristics or variables found in the liquidated damages provision in *Crown Series* or *Ramada Franchise*. Although SIS contends that Stoneridge's profits were a reasonable measure of SIS' loss because the profits and expenses are "common" in the industry, the liquidated damages provision here, unlike the liquidated damages provisions in *Crown Series* and *Ramada Franchise*, does not mention or reference those metrics or variables. As such, neither *Crown Series* nor *Ramada Franchise* support SIS' contention in this case that a breaching party's profit is an appropriate measure of probable loss.

We decline to read into the liquidated damages provision here a level of specificity that was left out by the parties. *See J.P. Carey Enters., Inc. v. Cuentas, Inc.*, 864 S.E.2d 588, 595 (Ga. Ct.

App. 2021) (noting that Georgia courts construe liquidated damages provision strictly).  To be clear, the reason for our conclusion is not, as SIS contends, that we are demanding a level of precision or "exactitude" that is not required under Georgia law.  *See* Appellant's Br. at 28.  We are not saying that a more precise formula should have or could have been employed.  We simply do not think that a formula that is entirely predicated on the breaching party's direct or indirect profits without any regard to the nonbreaching party's actual loss, such as the one employed in this case, could be considered a reasonable pre-estimate of the probable loss.

## D

SIS raises a few additional arguments to support its contention that the district court erred in concluding that the liquidated damages provision was unenforceable, but we are unpersuaded by them.

First, the district court did not fail to hold the parties to the deal they made.  SIS repeatedly argued in its brief and during oral argument that the liquidated damages provisions could not have been deemed a "penalty" because both SIS and Stoneridge were equally sophisticated and experienced "contract makers with extensive knowledge of the Microsoft Dynamics industry."  Appellant's Br. at 31-32.  SIS' argument is unpersuasive both (1) because sophistication is not the touchstone of enforceability; and (2) because the argument ignores that § 5 of the MCA does not provide a reasonable mechanism for calculating the damages resulting from a breach and instead seeks to deprive the breaching party of all

direct or indirect benefit from breaching the agreement. *See Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 447 S.E.2d 94, 96 (Ga. Ct. App. 1994) ("Notwithstanding the fact that a liquidated damages provision represents the parties' agreement as to compensation for a breach of contract, if the underlying contract itself violates some principle of law, the liquidated damages provision cannot be enforced."). *See also* O.C.G.A. § 13-6-7 (rendering unenforceable any liquidated damages provision that violates a principle of law).

Second, the district court did not prematurely rule on the enforceability of the liquidated damages provision in violation of Federal Rule of Civil Procedure 50(a). SIS claims that the district court "*sua sponte*" ruled on the liquidated damages issue without "either party ha[ving] been fully heard in the jury trial with regard to evidence related to liquidated damages." Appellant's Br. at 22. SIS is incorrect. The district court did not *sua sponte* rule on the enforceability of the MCA's liquidated damages provision. At the end of the second day of trial and after ruling on the admissibility of a trial exhibit, the district court discussed various housekeeping items with the parties. During this discussion, defendants voiced their concern about plaintiff's "references to the MCA's damages provision," so the district court set a plan to hear argument on this issue, which had been previously raised in the defendants' trial brief and which was triggered by SIS' shift of its breach of contract theory on the eve of trial. The district court specifically asked SIS if it wanted to respond to the defendants in writing or if it wanted to

present argument, but SIS declined the opportunity to respond in writing and opted to argue the matter instead. It was only after the district court heard both parties' arguments that it ruled that § 5 of the MCA was unenforceable.

Consequently, SIS' suggestion that the district court violated Rule 50(a) in ruling on the enforceability of the liquidated damages provision at trial is meritless. As discussed in the previous paragraph, Stoneridge did not make a Rule 50 motion. The district court instead, "as the [entity] initially called upon to decide the many questions of law and fact that occur in the course of a trial," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981), ruled on a legal issue—the enforceability of a liquidated damages clause. *See Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 375 S.E.2d 222, 223 (Ga. 1989) ("[T]he enforceability of a liquidated-damages provision in a contract is a question of law for the court."); *MMA Cap. Corp. v. ALR Oglethorpe, LLC*, 785 S.E.2d 38, 41 (Ga. Ct. App. 2016) (same).

Third, the district court did not fail to hold Stoneridge to its burden of proof. Georgia law is clear that "the party who defaults on the contract has the burden of proving the liquidated damages clause is an unenforceable penalty." *J.P. Carey Enters, Inc.*, 864 S.E.2d at 594 (internal quotation marks and citation omitted). Here, there is no indication that the district court did not hold Stoneridge, as the defaulting party, to its burden of proof. Under Georgia law, the defaulting party can carry its burden by "proving any

of the three factors is lacking," which is what Stoneridge did here. *See Ultra Grp. of Cos., Inc.*, 849 S.E.2d at 534.

Finally, the district court did not leave SIS "without a remedy." Appellant's Br. at 33. The fact that the jury awarded SIS $85,000 in nominal damages belies SIS' entire argument as to this point. If SIS found itself without a remedy after the district court concluded the liquidated damages provision was unenforceable, that was a product of its own doing. Under Georgia law, SIS had the ability to recover its actual damages, but after four years of litigation and on the eve of trial, SIS withdrew its claims of breach of the oral subcontractor agreement in order to rely exclusively on the breach of the MCA and its liquidated damages provision. SIS' precarious position was thus self-inflicted, and its difficulty in establishing actual damages or lost profits does not mean that a remedy was not available.

## III

We next turn to Stoneridge's cross-appeal, which challenges the district court's refusal to reduce the jury's award of $85,000 in nominal damages. We conclude that the district court did not err in refusing to disturb the jury's nominal damages award.

## A

We review the denial of a motion for judgment as a matter of law *de novo*. *See Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003). Additionally, we review the denial of a motion for remittitur under an abuse of discretion standard. *See Moore v. Appliance*

*Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013).  And we consider the evidence and the inferences drawn from it in a light most favorable to the nonmoving party.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008).

## B

Stoneridge argues that the $85,000 awarded by the jury in nominal damages does not meet the "standard of triviality required by Georgia law."  Appellee's Br. at 40.  We disagree.

Under Georgia law, in a breach of contract case "the injured party may recover nominal damages sufficient to cover the costs of bringing the action."  O.C.G.A. § 13-6-6.  Although nominal damages are generally defined as a "trivial sum," in Georgia the term "nominal damages" is "purely relative, and carries with it no suggestion of certainty as to amount."  *Wright v. Wilcox*, 586 S.E.2d 364, 367 (Ga. Ct. App. 2003) (internal quotation marks and citation omitted).  Indeed, "[i]nstead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely."  *Id.*  According to the Georgia Supreme Court, "[i]n some cases, a very small amount might constitute the trivial sum contemplated by the term 'nominal damages'; in others, a much larger amount might measure down to the same standard of triviality.  It would depend largely upon the vastness of the amount involved what sum would be considered trivial."  *Sellers v. Mann*, 39 S.E. 11, 11–12 (Ga. 1901).

21-13567                Opinion of the Court                21

Here, Stoneridge's discontent with the nominal damages awarded by the jury is primarily based on the size or excessiveness of the award.  In Georgia, however, "even though a verdict for nominal damages may be apparently large in its amount, it cannot be set aside simply because the amount is large, absent evidence of prejudice or bias in any incident at trial or a mistake on the part of the jury."  *Wright*, 586 S.E.2d at 367.  Stoneridge does not dispute this point of law.  *See* Appellee's Br. at 38.  Stoneridge also does not point to any evidence of prejudice, bias in an incident at trial, or mistake on the part of the jury.  Thus, considering the absence of that kind of evidence, Stoneridge's argument that the jury's $85,000 nominal damages award should be reduced—which is based solely on the excessive size of the nominal damages award—fails as a matter of law.  *See MTW Inv. Co. v. Alcovy Props., Inc.*, 616 S.E.2d 166, 169 (Ga. Ct. App. 2005) (refusing to set aside an award of $625,000 in nominal damages under Georgia law when the appellant argued solely that the "excessive amount" justified the court's intervention).  *See also Wright*, 586 S.E.2d at 367 (rejecting the contention that the trial court should have set aside a $22,000 nominal damages award based on the argument that it was an excessive award as a matter of law where there were no allegations or evidence of mistake or prejudice by the jury).

Stoneridge argues that the jury was "confused" about what triviality meant.  *See* Appellee's Br. at 40.  That argument is misplaced.  The district court instructed the jury on the definition of nominal damages under Georgia law and explained that "[n]ominal

damages are generally defined as a trivial sum . . . [i]t is intended as a vindication of the right of the party who brings an action upon good cause, but it is not intended to compensate the party for the breach of the contract." App. at 1513. Then, later during deliberations the jury submitted a question asking what a reasonable "trivial sum" was for purposes of a nominal damages award. *See* D.E. 231-1 at 1-2. After hearing the parties' input, the district court explained to the jury that it was for them, the jurors, to decide. Stoneridge conceded in its brief that the district court provided a "true" statement of the law when it responded to the jury's question. *See* Appellee's Brief at 40. Stoneridge also does not raise any argument that the jury failed to follow the district court's instructions. We therefore agree with the district court that the question posed by the jury did not reflect a mistake or misunderstanding by the jury but was simply an attempt to "seek clarity on the jury instructions' reference to a trivial sum." D.E. 260 at 15 (internal quotation marks omitted). Stoneridge's contention that in this case—where SIS asked for $5.6 million in damages—the jury was confused when it awarded $85,000 in nominal damages, fails.

## C

The cases relied by Stoneridge to support its argument that the jury's nominal damages award should be reduced are unconvincing.

First, some of the cases cited by Stoneridge for the proposition that nominal damages are "commonly under $100," Cross-Appellant's Reply Br. at 12, were not decided under Georgia's flexible

nominal damages award standard. *See Jones v. Crew Distrib. Co.*, 984 F.2d 405, 407–09 (11th Cir. 1993); *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1259 (11th Cir. 2006).

Second, just because some courts have found that lesser awards of nominal damages under the circumstances of those cases were not excessive under Georgia law does not mean that the jury's award in this case is excessive. *See Ponce de Leon Condos. v. DiGirolamo*, 232 S.E.2d 62, 65 (Ga. 1977) (holding that a jury award of $1,000 in nominal damages was not excessive); *Duckworth v. Collier*, 296 S.E.2d 640, 642 (Ga. Ct. App. 1982) (holding that a jury award of $1,500 is not excessive). Indeed, "a very small amount might constitute the trivial sum contemplated by the term 'nominal damages' [in some cases]" while "a much larger amount" might constitute that trivial sum in other cases. *Wright*, 586 S.E.2d at 367 (citation omitted).

Finally, most of the cases relied by Stoneridge are legally and/or factually distinguishable. *See Quainoo v. City of Huntsville*, 611 F. App'x 953, 955 (11th Cir. 2015) (deciding an attorney's fee award in a 42 U.S.C. § 1983 case); *Fowler's Holdings, LLLP v. CLP Fam. Invs., L.P.*, 732 S.E.2d 777, 778 (Ga. Ct. App. 2012) (overturning a nominal damages award in the amount of $120,000 entered in a bench trial where the trial court found and acknowledged that the damages suffered were not trivial but substantial); *McEntyre v. Edwards*, 583 S.E.2d 889, 890 (Ga. Ct. App. 2003) (affirming the jury's award of $1 in nominal damages, which was the "amount actually requested by the defendants").

Accordingly, the district court did not err in denying Stoneridge's motion for judgment as a matter of law, or in the alternative, remittitur, seeking to reduce the jury's award of $85,000 in nominal damages.

## IV

We affirm the district court's rulings that (1) the liquidated damages provision in the MCA was unenforceable, and (2) that the jury's $85,000 nominal damages award should remain undisturbed.

**AFFIRMED**.